## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

MICHAEL A. CAMPBELL,           )
                               )
      Plaintiff,           )
                               )
v.                             )     Case No.: 5:22-cv-00399-R
                               )
OKLAHOMA COUNTY DETENTION       )
CENTER, et al.,                )
                               )
      Defendants.          )

---

## MOTION TO DISMISS AND BRIEF IN SUPPORT OF
## TURN KEY DEFENDANTS

---

COME NOW Defendants, Turn Key Health Clinics, LLC, Mark Winchester, M.D.,

Becky Pata, APRN, Amanda Jackson, CMA, and Othello Capehart, CMA and jointly move

this Court to dismiss this action against them pursuant to Fed. R. Civ. P. 4 and Fed. R. Civ.

P. 12(b)(6). In support thereof, Defendants respectfully submit to the Court the following

Brief.

## TABLE OF CONTENTS

STATEMENT OF THE CASE .......................................................................... 1

ARGUMENTS AND AUTHORITIES ............................................................... 1

PROPOSITION I: Plaintiff has failed to state a constitutional claim upon which relief may be granted against the Turn Key Defendants ................................................. 7

   A. Plaintiff has failed to allege facts sufficient to show that he suffered an underlying constitutional deprivation by any Turn Key employee ..................... 8

   B. Plaintiff has failed to allege facts sufficient to state a constitutional claim against Defendants based on a Municipal Liability theory ............................... 16

PROPOSITION I: Turn Key Defendants are immune from liability from Plaintiff's state law negligence claims .......................................................................... 21


CONCLUSION .............................................................................................. 19

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) ...................................................................................................... 8, 18, 20

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) 7, 8, 20

*City of Canton Ohio v. Harris*, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412, 388-89 (1989) ........................................................................ 18

*Debrow v. Kaiser*, 42 F. App'x 269, 269 (10th Cir. 2002) ............................... 16

*Dodds v. Richardson*, 614 F.3d 1185, 1208 (10th Cir. 2010) ........................... 17

*Douglas v. Miller*, 864 F.Supp.2d 1205, 1217 (W.D.Okla. 2012) ..................... 20

*Ellibee v. Fox,* 244 Fed.Appx. 839, 843 (10th Cir. 2007) ............................... 20

*Estelle v. Gamble*, 429 U.S. 97, 105, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976) .... 8, 9

*Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811, 828-837

(1994) .................................................................................................... 10

*Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941, 948–49 (N.D. Tex. 2014) ............ 19

*Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985) ......................... 8, 11

*Gaston v. Ploeger*, 229 Fed.Appx. 702, 710 (10th Cir. 2007), *unpublished* ............. 13

*Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) .................................. 11, 12

*Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997) ..................................... 10

*Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976) ........ 9

*Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) ............................... 8, 20, 23

*Heidtke v. Corr. Corp. of Am.*, 489 Fed. Appx. 275, 279-80 (10th Cir. 2012), *unpublished* .................................................................................... 13, 14

*Johnson v. Cannon*, 2009 WL 1916928, 2 (E.D.Okla. 2009) ............................... 17

*Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) ............................... 10, 11

*Kermicle v. Day,* 428 F.Supp.16 (10th Cir. 1976) ......................................... 16

*Martin v. Creek County Jail*, 2010 WL 4683852, 3 (N.D. Okla. 2010), *not reported* ........ 9

*Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009) ............................. 8, 10, 11

*Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005) .................................. 11, 12

*McClain v. Sheriff of Mayes Cty.*, 595 F. App'x 748, 753–54 (10th Cir. 2014) ............ 19

*Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) .. 16, 17, 18, 19, 21

*Oklahoma City v. Tuttle*, 471 U.S. 808, 822-24 (1985) .................................. 17, 19

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (U.S. Ohio 1986) ....................... 17

*Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001) ......................... 19

*Prince v. Turn Key*, 2019 WL 238153, *10 (N.D. Okla. Jan. 16, 2019) ................ 19, 24

*Redding v. Marsh*, 750 F.Supp.473, 479 (E.D.Okl.1990) ⟶ 16

*Riddle v. Mondragon*, 83 F.3d 1197 (10th Cir. 1996) ⟶ 18

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ⟶ 8, 20

*Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) ⟶ 10, 11

*Self v. Crum*, 439 F.3d at 1231 (10th Cir. 2006) ⟶ 12, 13

*Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976) ⟶ 15

*Soboroff v. Federal Transfer Center*, 2013 WL 4788614, * 3-4 (W.D. Okla. 2013), *unpublished* ⟶ 17

*Tennant v. Miller*, 589 F. App'x 884, 885-86 (10th Cir. 2014) ⟶ 9

*Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ⟶ 9, 14

*White v. Kansas Dept. of Corrections*, 664 Fed. Appx. 734 (10th Cir. 2016), *unpublished* ⟶ 17

*Whitesel v. Sengenberger*, 222 F.3d 861, 870 (10th Cir. 2000) ⟶ 16

*Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) ⟶ 9

*Williams v. City of Tulsa, OK*, 393 F.Supp.2d 1124, 1128 (N.D.Okla.2005) ⟶ 15

*Wise v. Bravo,* 666 F.2d 1328, 1333 (10th Cir.1981) ⟶ 8

<u>RULES</u>

Fed. R. Civ. P. 8

Fed. R. Civ. P. 12(b)(6)

<u>STATUTES</u>

42 U.S.C. § 1983

## STATEMENT OF THE CASE

Plaintiff Michael A. Campbell, a *pro se* litigant, brings this cause of action against Turn Key Health Clinics, LLC ("Turn Key"), Mark Winchester, M.D. ("Dr. Winchester"), Becky Pata, APRN ("Ms. Pata"), Amanda Jackson, CMA ("Ms. Jackson"), and Othello Capehart, CMA ("Mr. Capehart") (collectively, the "Turn Key Defendants"), the Turn Key Defendants under 42 U.S.C. § 1983 for deliberate indifference, alleging that the Defendants collectively failed to provide him with proper medical care in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution. ECF Doc. 25. He brings his causes of action against the individual Defendants in their individual and official capacities. ECF Doc. 25, p. 5. In support of his claims, Plaintiff alleges that Defendants Dr. Winchester, Turn Key, Mr. Monday, and Mr. Williams "each had knowledge that prior to being arrested on 02-15-2022, [he] was under Dr. Ali's care at the V.A. Hospital in OKC" and that he had received pre-operative approval by an outside orthopedic surgeon for elective total hip joint replacement surgery for his degenerative disease. ECF Doc. 25, pp. 6-7.

Plaintiff alleges that Turn Key denied him the total hip replacement surgery because Turn Key had confirmed from his outside treating provider that he, in fact, did not have any hip replacement surgery scheduled but instead had "walked out of [his[ final dotor's appt @ V.A. Hospital with Dr. Ali, to hire different primary care doctor, for second opinion." ECF Doc. 25, p. 21. He alleges Dr. Winchester has only provided him with "aspirins, or that which was the equivalent thereof" for treatment of his pain, as opposed to Controlled Dangerous Substances ("CDS")-grade pain medications, which he claims is deliberate indifference. ECF Doc. 25, p. 7. He alleges Dr. Winchester explained to him that

higher level narcotics are not allowed in the OCDC institution. *Id.*, p. 18. He also alleges that Dr. Winchester prescribed him a cane to help him walk. *Id.*, p. 15.

He alleges that Ms. Pata prescribed him Tylenol 4 upon his transfer from the Oklahoma County Detention Center to the Cleveland County Jail, but then she discontinued his controlled narcotic and prescribed him the same non-CDS pain medications that Dr. Winchester had placed him on. *Id.*, pp. 7-8. Plaintiff alleges that both Dr. Winchester and Ms. Pata informed him that Turn Key would not allow them to prescribe more potent "pain management medication" in the jails. *Id.*

In support of his claim against Defendant Amanda Jackson, CMA, Plaintiff alleges that on April 1, 2022, a medication pass nurse told him that she could not bring his medications to his bed, which was in his cell, due to policy. ECF Doc. 25, p. 9. However, Plaintiff alleges that the detention officer who was escorting this unidentified nurse during pill pass did carry his medications to him within his cell at his bed. *Id.* He alleges that thereafter, the unnamed nurse and detention officer "radioed for medical help," and Ms. Jackson arrived at his cell, took his blood pressure and ran a ink pen up & down my leg and said that 'I needed a doctor, and she will be right back with the doctor." *Id.* He alleges Ms. Jackson did not immediately return with a doctor. *Id.* Notwithstanding this allegation, Plaintiff also alleges that he was seen by Dr. Winchester through the time period of February 15, 2022 to May 27, 2022. *Id.*, p. 7 at ¶ (2)(B).

As to his claim against Defendant Othello Capehart, CMA, Plaintiff alleges that on April 26, 2022, he filed a grievance because Mr. Capehart and the other evening medication pass nurses performed evening pill pass at 12:00 a.m., as opposed to 5:00 p.m. when

Plaintiff would have preferred his evening medication pass. *Id*., pp. 9-10. He alleges that

on April 26, 2022, he could not get out of his bed in his cell due to alleged pain, and that

Mr. Capehart and the detention officer told him that he had to get out of his bed in his cell

to receive his medications. *Id*. However, Plaintiff also alleges that the Oklahoma County

Detention Center has a policy of "not allow[ing] the pill call LNU's to step inside a cell

(2Ft.) to pass a bedstricken w/pain inmate his pain medication" *Id*., p. 10. As a result,

Plaintiff alleges that it is incumbent upon the detention officerswho are escorting the pill

passers, and not the nurses, to decide whether to carry the medications to inmates who do

not leave their cells. *Id*.

   Plaintiff also makes a claim for deliberate indifference related to bed bug bites.

However, he does not specify whether any medical personnel were allegedly deliberately

indifferent to his bites, and it does not appear that any of these allegations are directed

toward the Turn Key Defendants actually named in this lawsuit. ECF Doc. 25, pp. 23, 26.

Lastly, Plaintiff asserts a claim for medical negligence under Oklahoma common law

against the Turn Key Defendants. *See* ECF Doc. 25, pp. 24-25.

## <u>ARGUMENTS AND AUTHORITIES</u>

**PROPOSITION I:**     **Plaintiff has failed to state a constitutional claim against the Turn Key Defendants.**

   A motion to dismiss is properly granted when a complaint provides no "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). In

considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court

must determine whether the claimant has stated a claim upon which relief may be granted. The factual allegations within the Amended Complaint "must be enough to raise a right to relief above the speculative level." *Id.*

A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell* at 570. For a complaint to have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support of these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). A plaintiff's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

### A. Plaintiff has failed to allege facts sufficient to show that he suffered an underlying constitutional deprivation by any Turn Key employee.

Plaintiff asserts claims arising under 42 U.S.C. § 1983. To establish a constitutional violation for denial of medical attention under the Fourteenth Amendment, a plaintiff must show "deliberate indifference to serious medical needs." *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009), quoting *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985). Plaintiff's claims must be judged against the "deliberate indifference to serious medical needs" test of *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S. Ct. 285, 291, 50 L. Ed.

2d 251 (1976) (citing *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain". *Estelle*, 429 U.S. at 104, citing *Gregg*, 428 U.S. at 173. "[E]very claim by a prisoner that he has not received adequate medical treatment" does not state "a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105.

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.

*Id*. at 105-06.  To "state a claim under § 1983, an individual must allege misconduct that is 'so egregious as to subject the aggrieved individual to a deprivation of constitutional dimensions.'" *Martin v. Creek County Jail*, 2010 WL 4683852, 3 (N.D. Okla. 2010), *not reported,* quoting *Wise v. Bravo,* 666 F.2d 1328, 1333 (10th Cir.1981). "When misconduct falls short of this standard, an individual must seek relief in state court under traditional tort-law principles." *Id.* As such, a complaint alleging negligence in diagnosing or treating a medical condition does not become a valid constitutional claim of medical mistreatment simply because the victim is a prisoner.

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only

such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id*. Negligence alone does not state a claim under § 1983 for deliberate indifference to medical needs. *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). Differences in judgment between an inmate and jail medical personnel regarding appropriate medical diagnosis or treatment also are not enough to state a deliberate indifference claim. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). To prevail on a deliberate indifference claim, a plaintiff "must show deliberate indifference to a substantial risk of serious harm. The claim contains objective and subjective elements. Objectively, the deprivation must be sufficiently serious. Subjectively, the defendant must have been aware of a substantial risk of serious harm." *Tennant v. Miller*, 589 F. App'x 884, 885-86 (10th Cir. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811, 828-837 (1994) (internal citations omitted); *see also Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005); *see Martinez*, 563 F.3d at 1088-89.

Thus, in order to sufficiently plead a claim under § 1983 for deliberate indifference, Plaintiff must allege that a specific actor was subjectively aware of the risk of harm to Plaintiff and disregarded such known risk. *See Farmer,* 511 U.S. at 829. There must be a showing of "'more than ordinary lack of due care for the prisoner's interests or safety.'" *Id*., quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Specifically, in order to impose liability, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer, supra*, 511 U.S. at 837. Thus, Plaintiff must show that Turn Key, by and through a specific actor, knew of and disregarded a substantial risk

of harm to Plaintiff by withholding medical treatment.

To establish a constitutional violation for denial of medical attention under the Fourteenth Amendment, a plaintiff must show "deliberate indifference to serious medical needs." *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009), quoting *Garcia*, 768 F.2d at 307. "Deliberate indifference involves both an objective and a subjective component." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005); *see Martinez*, 563 F.3d at 1088-89. "The objective component of the test is met if the 'harm suffered rises to a level "sufficiently serious" to be cognizable under the Cruel and Unusual Punishment Clause' of the Eighth Amendment." *Martinez*, 563 F.3d at 1088, quoting *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005). "[I]t is the harm claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely 'the symptoms presented at the time the prison employee has contact with the prisoner.'" *Id*. (quoting *Mata*, 427 F.3d at 753). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010).

First, Plaintiff has failed to plead sufficient allegations to establish the objective component of the deliberate indifference test. "The objective component of the test is met if the 'harm suffered rises to a level "sufficiently serious" to be cognizable under the Cruel and Unusual Punishment Clause' of the Eighth Amendment." *Martinez*, 563 F.3d at 1088, quoting *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005). "[I]t is the harm claimed by

the prisoner that must be sufficiently serious to satisfy the objective component, and not solely 'the symptoms presented at the time the prison employee has contact with the prisoner.'" *Id.* (quoting *Mata*, 427 F.3d at 753). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010).

Taking Plaintiff's allegations as being true, Plaintiff suffered from severe degenerative joint disease prior to incarceration at the Oklahoma County Jail, but he was not scheduled for any hip replacement surgery at the time of his arrest (and, in fact, was seeking a second opinion as to the necessity of the same). Thus, Plaintiff did not suffer any deterioration in condition or substantial harm during his incarceration due to the alleged denial of an elective orthopedic surgery. Instead, Plaintiff's allegations are that he came in with severe degenerative joint disease in his hips, and that he continues to have severe degenerative joint disease in his hips.

Inasmuch as Plaintiff is arguing that Defendants caused a delay in scheduling his elective degenerative hip surgery, Plaintiff has failed to sufficiently plead facts to show that there was any delay caused by Turn Key staff, including Dr. Winchester, which resulted in substantial harm. Plaintiff has failed to meet his pleading burden because he has not pled any facts to suggest that he suffered any harm, let along substantial harm. Nor has Plaintiff alleged that he suffered from considerable pain. Accordingly, Plaintiff fails to allege facts from which to reasonably infer that he has suffered a sufficiently serious harm

to satisfy the objective component of a constitutional claim. *See Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) ("Delays that courts have found to violate the Eighth Amendment have frequently involved *life-threatening situations* and instances in which it is apparent that delay would exacerbate the prisoner's medical problems"); *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (holding that a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm"); *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (holding that the substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or *considerable* pain."); *Stack v. McCotter*, 79 Fed.Appx. 383, 389 (10th Cir. 2003), unpublished ("not every twinge of pain suffered as the result of delay in medical care is actionable.").

Second, Plaintiff has failed to plead sufficient allegations to establish the subjective component of the deliberate indifference test, which "requires a showing that the defendant acted with a culpable state of mind." *Gaston v. Ploeger*, 229 Fed.Appx. 702, 710 (10th Cir. 2007), *unpublished*. A jail official "cannot be liable for a claim of deliberate indifference 'unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Heidtke v. Corr. Corp. of Am.*, 489 Fed. Appx. 275, 279-80 (10th Cir. 2012), *unpublished,* quoting *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006). "The subjective Component is akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Id.* at 280. "[O]ur case law firmly establishes

that 'the subjective component is not satisfied, absent an extraordinary degree of neglect'." *Heidtke* at 280 (quoting *Self* at 1232). "[I]n this Circuit, the 'negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Heidtke*, *id.,* quoting *Self* at 1233. "Only when the symptoms obviously point to a substantial risk of harm can we draw an inference of the medical professional's conscious disregard of an inmate's medical emergency." *Id.,* 282.

Plaintiff has failed to plead facts sufficient to show that any Turn Key employee, including Dr. Winchester, Ms. Pata, Ms. Jackson, or Mr. Capehart, knew that he was at substantial risk of serious harm while incarcerated at the Oklahoma County Detention Center ("OCDC"), and that any such actor consciously disregarded any such risk. Plaintiff alleges that he reported to Turn Key staff that he had scheduled an elective, total hip replacement prior to his arrest with Dr. Ali at the VA Hospital, and Turn Key staff discovered this report to be untrue after verifying with Plaintiff's outside medical records at the VA Hospital (which showed that Plaintiff had in fact walked out of his appointment to see another opinion). Thus, Plaintiff's own allegations are that he did not have a hip replacement surgery scheduled or even tentatively scheduled prior to incarceration. Plaintiff does not allege that Dr. Winchester or Ms. Pata failed to provide him with treatment or care. Instead, he merely disagrees with the care provided because they did not prescribe him strong narcotics to treat his pain. Thus, Plaintiff's allegations rise to no more than a mere disagreement with the treatment he was given.

Plaintiff's criticisms of Dr. Winchester and Ms. Pata amount to no more than a disagreement with the level of pain medication he was prescribed. As to Ms. Jackson,

13

Plaintiff's own allegations are that Ms. Jackson did assess Plaintiff, and that Plaintiff continued to receive treatment from Dr. Winchester throughout his incarceration, including after he was assessed by Ms. Jackson. Thus, Plaintiff's criticism is only that Ms. Jackson did not *immediately* return with a doctor when she assessed him—not that he was *denied* access to a doctor or failed to see a doctor. Similarly, Plaintiff's allegations as to medication pass against Mr. Capehart are that he could not walk Plaintiff's medications to him in his cell due to jail policy—obviously due to safety reasons—and that detention staff, who were allegedly responsible for carrying the medications inside the inmate's cell, failed to do so. Plaintiff's allegations are insufficient to establish the subjective component of the deliberate indifference standard, and dismissal is proper at this time.

Taking Plaintiff's allegations as being true, no Turn Key employee ever subjectively believed that Plaintiff was an imminent danger of harm. In fact, Plaintiff does not allege that he suffered any harm as a result of the acts and/or omissions of any Turn Key actor, including Dr. Winchester, Ms. Pata, Ms. Jackson, or Mr. Capehart. Plaintiff's claims in this case amount to no more than a disagreement with the medical treatment he received from Turn Key; he would have preferred another course of treatment for his pain, specifically he would have preferred to undergo an elective, total hip replacement surgery and higher grade pain medications. Taken as a whole, Plaintiff's allegations are insufficient to establish deliberate indifference against Defendants. Differences in judgment between an inmate and jail medical personnel regarding appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Plaintiff's allegations are insufficient to state a claim for a constitutional deprivation. If medical care was provided, and there is only a disagreement as to whether the proper care was provided, the case sounds in tort and does not rise to the level of a civil rights claim. *Smart v. Villar*, 547 F.2d 112 (10th Cir.1976); and *Debrow v. Kaiser*, 42 F. App'x 269, 269 (10th Cir. 2002). Where there is no allegation of a total denial of care, but rather plaintiff disagrees with the care provided, the civil rights claim fails. *Kermicle v. Day,* 428 F.Supp.16 (10th. Cir. 1976). Whether an alternative method of treatment was appropriate is a question of negligence, not of constitutional violation. *Redding v. Marsh*, 750 F.Supp.473, 478 (E.D.Okl.1990). Whether a medical provider made the right decision concerning a medical diagnosis or treatment is a question of negligence law which does not rise to the level of a constitutional deprivation. *Id.* at 479.

### B. Plaintiff has failed to allege facts sufficient to state a constitutional claim against Defendants based on a Municipal Liability theory.

Courts have routinely held that there is no vicarious liability for § 1983 claims, *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978), and the language of § 1983 cannot be read to impose vicarious liability based solely on the existence of an employer-employee relationship. *Id*. at 692; *see, also, Williams v. City of Tulsa, OK*, 393 F.Supp.2d 1124, 1128 (N.D.Okla.2005) ("It is well established that municipalities do not incur liability under a theory of *respondeat superior* in a § 1983 suit."). The only method by which Turn Key, a private company, could arguably be found to have been deliberately indifferent would be through a municipal liability theory. Any theory of municipal liability against Turn Key is insufficient when taking all of Plaintiff's allegations as being true.

The municipal liability theory requires the plaintiff to prove that an established specific policy, procedure or custom caused the plaintiff to suffer a constitutional deprivation. *Johnson v. Cannon*, 2009 WL 1916928, 2 (E.D.Okla. 2009), citing *Whitesel v. Sengenberger*, 222 F.3d 861, 870 (10th Cir. 2000). "[T]he Supreme Court has long held that municipalities are not liable for the constitutional torts of their employees merely on a *respondeat superior* basis. Instead, municipalities are only liable for constitutional violations that they have directly caused." *Dodds v. Richardson*, 614 F.3d 1185, 1208 (10th Cir. 2010), quoting *Monell*, 436 U.S. at 691 (citations omitted). Moreover, the U.S. Supreme Court held in *Pembaur v. City of Cincinnati*, that "[m]unicipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (U.S. Ohio 1986), citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-24 (1985) (emphasis added). An "official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id*.

Thus, in order to state § 1983 claims against Turn Key, Plaintiff must allege facts sufficient to show that Turn Key executed a policy or custom that *caused* the alleged constitutional deprivations. The Tenth Circuit has made clear that "a municipality can be liable under § 1983 only where its policies are the '*moving force [behind] the constitutional violation.*'" *City of Canton Ohio v. Harris*, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 1205,

103 L.Ed.2d 412, 388-89 (1989) (emphasis added).

Plaintiff fails to plead any factual basis sufficient to establish that there was any "custom or practice" of Turn Key which caused any alleged constitutional deprivation. Plaintiff's conclusory, unparticularized allegations as to policies or customs are insufficient to establish *Monell* liability. Such allegations fail to show that Turn Key executed a policy or custom that *caused* the alleged constitutional deprivation. Simply put, Plaintiff's allegations are insufficient to show that any Defendant executed a specific policy or custom that caused any alleged constitutional deprivation. Without pleading any such specific facts in support of his municipal liability claim, Plaintiff's "claims are far too vague and conclusory to state a plausible claim for relief". *See, e.g.*, *Soboroff v. Federal Transfer Center*, 2013 WL 4788614, * 3-4 (W.D. Okla. 2013), *unpublished*. Federal courts have dismissed cases with conclusory allegations such as those made by Plaintiff, and the U.S. Supreme Court has specifically condemned such threadbare statements masquerading as purported facts. *Ashcroft*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *see also Riddle v. Mondragon*, 83 F.3d 1197 (10th Cir. 1996) (affirming dismissal of the plaintiff's inadequate medical care claim because the plaintiff's conclusory allegations did not rise to the level of deliberate indifference); and *White v. Kansas Dept. of Corrections*, 664 Fed. Appx. 734 (10th Cir. 2016), *unpublished*.

Plaintiff criticizes Turn Key's alleged policy of not allowing narcotics within their jail. However, this amounts to no more than a disagreement with the treatment provided, not a denial or delay in care, which sounds in tort and not constitutional law. Plaintiff has

wholly failed to show that any specific Turn Key policy was a moving force behind any alleged *constitutional deprivation*. Further, the Tenth Circuit and other federal courts have made clear that "a 'single isolated incident' does not prove the existence of an unconstitutional policy or custom." *McClain v. Sheriff of Mayes Cty.*, 595 F. App'x 748, 753–54 (10th Cir. 2014), citing *Okla. City v. Tuttle,* 471 U.S. 808, 821, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). *See, also, Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941, 948–49 (N.D. Tex. 2014) ("[A] municipality is almost never liable for an isolated unconstitutional act on the part of an employee"), citing *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001).

Plaintiff must further allege "the specific treatments or care that plaintiff was denied as a result of the [alleged] practices," in order to sufficiently allege causation for the purposes of municipal liability. *Prince v. Turn Key*, 2019 WL 238153, *10 (N.D. Okla. Jan. 16, 2019). *Monell* has stressed the importance of the "causation" element for municipal liability in stating that "Congress did not intend § 1983 liability to attach where such causation was absent." *Monell,* 436 U.S. at 692.  As Plaintiff has failed to allege sufficient facts to link a specific Turn Key policy and the alleged constitutional violation, Plaintiff has failed to state a plausible claim for relief under the municipal liability theory.

Plaintiff's reliance upon conclusory allegations with no factual support are insufficient as a matter of law. "Because § 1983 applies only to state actors, factual contentions supporting state action are necessarily essential to stating a plausible claim for relief, and 'mere conclusory allegations with no supporting factual averments are insufficient.'" *Douglas v. Miller*, 864 F.Supp.2d 1205, 1217 (W.D.Okla. 2012), quoting

*Ellibee v. Fox,* 244 Fed.Appx. 839, 843 (10th Cir. 2007). The factual allegations within the complaint "must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell* at 570. For a complaint to have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support of these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). A plaintiff's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The U.S. Supreme Court has specifically recognized that such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft,* 556 U.S. at 678. Plaintiff has failed to allege any facts sufficient to show that a specific policy or custom of Turn Key caused him to suffer an alleged constitutional deprivation. As a result, Plaintiff's claims against Defendant Turn Key should be dismissed.

Plaintiff also brings causes of action against Defendants Dr. Winchester, Ms. Pata, Ms. Jackson, and Mr. Capehart in their official capacity. Under § 1983, a defendant may be sued in either his individual capacity, or his official capacity, or in both. A claim against a state actor in his official capacity "is essentially another way of pleading an action against

19

the county or municipality" he represents. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). Local governments such as the OCDC can be held liable in these types of cases only where an employee violates a prisoner's rights while carrying out a county policy or custom. *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Here, Plaintiff has failed to allege any facts to show that he suffered any injury as a result of any Turn Key policy or custom. Plaintiff also has failed to allege that Defendants Dr. Winchester, Ms. Pata, Ms. Jackson, or Mr. Capehart promulgated or tacitly approved or encouraged any such unconstitutional policies or customs. Therefore, Plaintiff's official-capacity claim against Dr. Winchester, Ms. Pata, Ms. Jackson, and Mr. Capehart fail as a matter of law, and dismissal is proper at this time.

**PROPOSITION II:   Turn Key Defendants are immune from liability from Plaintiff's state law negligence claims.**

Plaintiff's negligence claim against the Turn Key Defendants must be dismissed as a matter of law because Defendants are immune from liability for such claims pursuant to the Oklahoma Governmental Tort Claims Act (OGTCA), Okla. Stat. tit. 51, § 151, *et seq*.

The Oklahoma Governmental Tort Claims Act is the exclusive method for asserting liability against a state, political subdivision, or their employees. *See* Okla. Stat. tit. 51, § 153(B). Under the OGTCA, "employee" includes "licensed medical professionals under contract with the city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies…" Okla. Stat. tit. 51, § 152(7)(b)(7). Oklahoma law provides that employees of a corporation such as Turn Key are "part and parcel of the corporation itself" and "their acts within limits of their employment are acts of corporation." *Thornton v. Holdenville General Hosp.*, 2001 OK CIV APP 133, ¶

13, 36 P.3d 456, 460-61. Therefore, Turn Key and all the licensed medical professionals it employs, including Defendants, fall squarely within the definition of "employee" set forth in Section 152(7)(b)(7) of the OGTCA; consequently, the limits on liability provided for in the Act apply to any claims arising out of the actions of Turn Key and/or its employees committed in the scope of their employment. *See* Okla. Stat. tit. 51, § 152.1(A) and § 153(B).

Within the framework of the OGTCA, "[s]cope of employment" is defined as "performance of an employee acting in good faith within the duties of the employee's office or employment." Okla. Stat. tit. 51, § 152(12). Providing medical care to inmates at the CCDC is directly within the scope of Defendants duties as a medical contractor at CCDC. Therefore, OGTCA immunity provisions apply to any alleged negligent acts or omissions committed by Defendants in providing medical care and treatment to Plaintiff during his incarceration at CCDC. *See* Okla. Stat. tit. 51, § 152.1(A).

The Oklahoma Supreme Court has squarely addressed the specific issue of whether jail healthcare contractors, such as Defendants, are immune from liability pursuant to the provisions of the OGTCA. *See Barrios v. Haskell Cty. Pub. Facilities Auth.*, 2018 OK 90, ¶ 1, 432 P.3d 233, 241. In *Barrios*, the Court issued its ruling in response to the following Certified Question:

> The Governmental Tort Claims Act renders the State immune from any suit arising out of the "[p]rovision, equipping, operation or maintenance of any prison, jail, or correctional facility." Do Sections 7 and 9 of Article II of the Oklahoma Constitution nonetheless allow an inmate to bring a tort claim for denial of medical care?

Answering the above question in the negative, the Court held as follows:

> Generally speaking, the staff of a healthcare contractor at a jail <u>are "employees" who are entitled to tort immunity under the GTCA</u> by virtue of sections 152(7)(b), 153(A), and 155(25). *See* 51 O.S. Supp. 2015 § 152(7)(b) ("As used in The Governmental Tort Claims Act: . . . 7.

21

'Employee' means any person who is authorized to act on behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time basis . . . b. For the purpose of The Governmental Tort Claims Act, the following are employees of this state, regardless of the place in this state where duties as employees are performed: . . . (5) physicians who provide medical care to inmates pursuant to a contract with the Department of Corrections, [and] . . . (7) licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies . . .”); *id.* §§ 153(A), 155(25). We have not been asked whether Turn Key Health, LLC or its staff are “employees” under section 152(7)(b), but have assumed that they are for purposes of answering the questions certified to us.

*Id.* at n. 5 (emphasis added).

As the Oklahoma Supreme Court explained, “in cases including tort claims against the State and <u>state actors</u>, the Court begins with the assumption that the State is statutorily immune from tort suit unless the Legislature has expressly waived that immunity.” *Id.*, ¶ 8 (emphasis added); *see also* Okla. Stat. tit. 51, § 152.1(A) (“[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability”). Pursuant to the Court's ruling in *Barrios*, <u>OGTCA immunity does apply</u> to correctional healthcare contractors, including Defendants, as they are considered state actors for the purpose of the Act. *See* Okla. Stat. tit. 51, § 152(7)(b).

Thus, in *Barrios v. Haskell Cty. Pub. Facilities Auth.*, the Oklahoma Supreme Court assumed that a corporate healthcare provider and its staff would count as “employees” under § 152(7)(b). *Barrios v. Haskell Cty. Pub. Facilities Auth.*, 432 P.3d 233, 236 n.5 (Okla. 2018). In doing so, the court noted that “[g]enerally speaking, the staff of a healthcare

contractor at a jail are 'employees' who are entitled to tort immunity under the GTCA." *Id.* Relying on *Barrios*, judges in Oklahoma courts have repeatedly held corporate medical providers, including Turn Key, to be "employees". *See Burke v. Regalado*, No. 18-CV-231-GKF-FHM, 2019 WL 1371144, at *2–3 (N.D. Okla. Mar. 26, 2019); *Prince v. Turn Key Health Clinics, LLC*, No. 18-CV-282-CVE-JFJ, 2019 WL 238153, at *9 (N.D. Okla. Jan. 16, 2019) (finding "persuasive the [*Barrios*] court's reasoning for assuming that Turn Key is an 'employee' " which is, "therefore, immune from tort liability"); *Holland v. Glanz*, 16-CV-349-JED-JFJ, 2019 WL 4781869 (N.D. Okla. Sept. 30, 2019); *Strain v. Armor Corr. Health Care Servs., Inc*., No. 19-CV-527-JED-FHM, 2020 WL 5026548, at *1 (N.D. Okla. Aug. 25, 2020); *Crocker v. Regalado*, No. 17-CV-149-TCK-FHM, 2019 WL 2146595, at *4 (N.D. Okla. May 16, 2019); *Bradshaw for Est. of Bradshaw v. Armor Corr. Health Servs., Inc*., No. 17-CV-615-TCK-FHM, 2019 WL 1675148, at *7 (N.D. Okla. Apr. 17, 2019); *Prince v. Turn Key Health Clinics, LLC*, No. 18-CV-0282-CVE-JFJ, 2019 WL 238153, at *9 (N.D. Okla. Jan. 16, 2019), unreported.

Thus, following the Opinion of the Oklahoma Supreme Court in *Barrios*, both federal and state forums have addressed the issue of whether the Grant of the OGTCA immunity extends to private corporations and their employees and/or agents providing healthcare services in correctional facilities such as Turn Key, and such forums have found in accord that it does. Therefore, Defendants are immune from liability for tort claims as a matter of law under the OGTCA, and any such claims of medical negligence against all Turn Key Defendants must be dismissed with prejudice to refiling.

## CONCLUSION

Dismissal of Plaintiff's claims against Defendants, Turn Key Health Clinics, LLC, Mark Winchester, M.D., Becky Pata, APRN, Amanda Jackson, CMA, and Othello Capehart, CMA is appropriate at this time, as Plaintiff has failed to state a claim against Defendants upon which relief can be granted under federal law.

WHEREFORE, Defendants, Turn Key Health Clinics, LLC, Mark Winchester, M.D., Becky Pata, APRN, Amanda Jackson, CMA, and Othello Capehart, CMA pray that this Court grant their joint motion and dismiss this action against them.

Respectfully submitted,

*s/ Alexandra G. Ah Loy*
Alexandra G. Ah Loy, OBA #31210
SWEET DEWBERRY HUBBARD, PLC
24 West Park Place
Oklahoma City, Oklahoma 73103
(405) 601-9400 Office
(405) 601-9444 Facsimile
allie@sdh.law

*Attorneys for Defendants, Turn Key
Health Clinics, LLC, Mark Winchester,
M.D., Becky Pata, APRN, Amanda
Jackson, CMA, and Othello Capehart,
CMA*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above foregoing document was mailed with proper postage thereon on this 6th day of February, 2023 to:

Michael A Campbell
#173840706
CHICKASHA-GCJ
215 N 3rd St
Chickasha, OK 73018
*Pro Se Plaintiff*

s/Alexandra G. Ah Loy
ALEXANDRA AH LOY
