**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MICHAEL A. CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: CIV-22-399-R |
| ) | |
| OKLAHOMA COUNTY DETENTION ) | |
| CENTER, *et al*. ) | |
| ) | |
| Defendants. ) | |

## **SPECIAL APPEARANCE AND SPECIAL REPORT**

The Oklahoma County Detention Center ("OCDC") specially appears before this Court for the sole purpose of submitting a special report as referenced in Judge Shon Irwin's Order Requiring Service and Special Report filed October 28, 2022. In support of this report, the Oklahoma County Detention Center states as follows:

### **SUMMARY OF FACTUAL ALLEGATIONS IN THE COMPLAINT**

**A.     Overview of the Parties to Litigation**

Offender Michael Campbell ("Plaintiff") was an inmate at the OCDC from February 16, 2022 until May 28, 2022. The records show that Offender Campbell was transferred to the Cleveland County Detention Center ("CCDC") on May 28, 2022, and he remains at the CCDC currently. Offender filed his original Complaint on May 16, 2022 while he was still incarcerated at OCDC, and he filed his Amended Complaint while incarcerated at the CCDC. Offender Davis listed the following seven parties as defendants in his Complaint:

1

1. The Oklahoma County Criminal Justice Authority ("OCCJA"), both officially and individually, which is a public trust created by the Board of County Commissioners for Oklahoma County to manage and operate the OCDC. The OCCJA is not an individual.

2. Turn Key Health, both officially and individually, which is a company who operates the medical unit at OCDC by contract. Turn Key is not an individual.

3. Dr. Mark Winchester, both officially and individually, who is a medical doctor employed by Turn Key.

4. Amanda Jackson, CMA, both officially and individually, who is an employee of Turn Key.

5. Othello Capehart, CMA, both officially and individually, who is an employee of Turn Key.

6. Mr. William Monday, both officially and individually, who was employed by the OCDC as Assistant Jail Administrator.

7. Mr. Greg Williams, both officially and individually, who was employed by the OCDC as Chief Executive Officer/Jail Administrator.

**B.     Offender Campbell's Account of the Allegations**

In his Amended Complaint, Offender Campbell claims that Defendants failed to provide him with adequate medical care in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution, as well as the Oklahoma Constitution Art. 2 §§ 7-9. (Doc. 25, Am. Comp p. 6.) Specifically, Offender Campbell asserts that the Defendants

were deliberately indifferent to his "excruciating pain" due to the "need for a total hip joint replacement surgery". (*Id*. at p. 7.) Offender Campbell makes further assertions against Defendants Turn Key, Dr. Winchester, Amanda Jackson, CMA, and Othello Capehart, CMA, for medical negligence as well. (*Id*. at pp. 7-8.) Specifically, Offender Campbell asserts Dr. Winchester failed to prescribe him adequate medications for his pain. (*Id*. at p. 7.) Offender Campbell asserts Defendants were deliberately indifferent to his bed bug bites. (*Id*. at p. 15.) Offender Campbell also asserts claims for "gross and culpable negligence"; however, he references *Lawson* in support of his claim which is a criminal case discussing criminal negligence from Virginia. (*Id*. at p. 24.) *See Lawson v. Commw.*, 547 S.E.2d 513 (Va. 2001).

### C. Factual Basis for Complaint as Recited by Offender Davis

1. Offender Campbell alleges that Dr. Winchester "refused" to provide him with pain medication "not more potent than a common aspirin". (*Id*. at p. 7.)

2. Offender Campbell alleges on April 1, 2022, he was in so much pain he could not get out of bed when he received his morning medications. (*Id*. at p. 9.) The officer and nurse "called for medical help" and Amanda Jackson, CMA arrived to evaluate him. (*Id*.) Ms. Jackson examined Offender Campbell and took his blood pressure. (*Id*.) According to Offender Campbell, Ms. Jackson stated she would return with a doctor but she never did. (*Id*.)

3. On April 26, 2022, Offender Campbell alleges he was in so much pain he could not get out of bed, and a detention officer and Othello Capehart, CMA would not enter the cell to give him medications. (*Id*. at p. 10.)

4. Offender Campbell alleges Defendants have a policy which will not allow the detention officer or medical staff to enter the cell to give medications. (*Id*.)

5. Offender Campbell alleges on March 12, 2022, he made phone calls to camera ops to report his "extreme severe pain", but no medical staff came to see him. (*Id*. at p.11.)

6. Offender Campbell alleges on March 31, 2022, he made phone calls to camera ops to report extreme pain, but no medical staff came to see him. (*Id*.) On the same day, he asserts he complained to the rover officer and the 13th Floor sergeant regarding his pain, and they told him to make a sick call. (*Id*.) When the nurse came to pass medications, Offender Campbell asserts that she "lied" when she stated she did not have medications for him. (*Id*.)

7. Offender Campbell alleges he submitted numerous requests to staff and medical grievances which relate to his "extreme pain" and request for total hip replacement surgery. (*Id*. at p. 17-19.)

8. Offender Campbell alleges he was "refused" his pain medications on February 27, 2022, March 31, 2022, and April 26, 2022. (*Id*. at p. 18-20.)

9. Offender Campbell alleges he had bed bugs and bed bug bites around the beginning of March 2022, and he filed a medical grievance for such on May 6, 2022. (*Id*. at pp. 15, 21.) Offender Campbell asserts he was seen by "Nurse Kyle" who ordered

medication on May 6, 2022, but he had not received the medication when "Nurse Kyle" followed up on May 20, 2022. (*Id*. at p. 21.)

## FINDINGS OF THE INVESTIGATION

On February 16, 2022, Offender Campbell was booked into the OCDC. Offender Campbell was interviewed by Turn Key staff during his intake, and the intake records reveal that he did not show signs of or report complaints which indicated an emergent condition which would require immediate treatment. (Ex. 1, p. 1.) Turn Key staff noted Offender Campbell's ease of movement was "unremarkable". (Ex. 1, p. 2.) As a result, Offender Campbell was recommended for general population classification with no specific medical referral. (Ex. 1, p. 3.) Offender Campbell listed Dr. Ali and the VA Hospital as his primary physicians. (Ex. 1, p. 1.)

On February 18, 2022, Offender Campbell complained of left hip pain due to "bilateral hip disability" from his military service, and he reported he used a cane at home for such. (Ex. 1, p. 4.) Offender Campbell was prescribed Acetaminophen 325 mg and Ibuprofen 200 mg at two tablets each twice per day for seven days until he could be seen by the doctor, and he was moved to the 13th floor for medical observation. (Ex. 1, p. 5.)

Dr. Winchester examined Offender Campbell on February 23, 2022, and they discussed his left hip pain as well as his request for a left total hip arthroplasty surgery. (Ex. 1, p. 6-7.) Dr. Winchester determined that the surgery was not urgently necessary or emergent in nature due to the chronic nature of Offender Campbell's pain as well as the heightened risk of infection following surgery when in the jail setting. (Ex. 2, p. 3-4.) Dr.

5

Winchester recommended he utilize a second mattress for comfort and a cane to help him ambulate. (Ex. 1, p. 6.) Dr. Winchester also prescribed Meloxicam 7.5 mg for pain and inflammation, which Offender Campbell began receiving the following day. (Ex. 1, p. 8.) Offender Campbell asserts he was "denied his pain medications" on February 27, 2022; however, the Turn Key Medication Administration Records indicate that the "patient did not come for med." (*Id.*)

On March 1, 2022, Offender Campbell was evaluated by Samantha Rumley, ARNP-CNP at the chronic care clinic. On March 12, 2022 Offender Campbell alleges he called the camera ops complaining of extreme pain, but medical did not come. Records show that Offender Campbell was seen the following day on March 13, 2022 by Samantha Rumley, ARNP-CNP. (Ex. 1, p. 9.) Offender Campbell asserts he submitted several sick call requests, requests to staff, and medical grievances between March 13th and March 31st regarding his subjective pain. (Doc. 25, Am. Comp p. 17.) Offender Campbell asserts he called camera ops for emergency medical help on March 31, 2022, and he spoke with the 13th floor staff sergeant about his complaints of pain; however, he does not assert there was any change in his condition or complaints throughout this time. (*Id.*)

On April 1, 2022, Offender Campbell alleges he was "bedridden with pain" and Amanda Jackson, CMA came to his cell and examined him. (Doc. 25, Am. Comp p. 19.) Although Offender Campbell asserts he was told by Ms. Jackson that she would immediately get a doctor, there is no such documentation to confirm this allegation. Offender Campbell submitted several other requests to staff and medical grievances from

6

April 6, 2022 to April 13, 2022 regarding his subjective pain. (*Id.*) Dr. Winchester examined Offender Campbell on April 14, 2022 for a follow up on his continued pain, and Dr. Winchester recommended he continue his current regimen with the addition of Methocarbamol (Robaxin) 750 mg. (Ex. 1, pp. 10-11.)

Offender Campbell alleges he submitted sick calls, requests to staff, and medical grievances complaining of subjective pain on April 15th, 18th, 20th, and 26th. (Doc. 25, Am. Comp p. 20.) On April 26, 2022, Offender Campbell alleges Othello Capehart, CMA and an unknown detention officer would not enter his cell to give him medications. (*Id.* at p. 10, 20.) The records indicate CMA Capehart documented that Offender Campbell "did not come for med" when he attempted to pass out medications that day. (Ex. 1, p. 12.) The records also reveal that CMA Capehart gave Offender Campbell his medications without incident the following day which insinuates CMA Capehart did not have an improper motive the day prior. (Ex. 1, p. 13.) Offender Campbell alleges he submitted additional medical grievances on May 2nd, 3rd and May 6th regarding his subjective pain. (Doc. 25, Am. Comp pp. 20-21.) Once again, Offender Campbell did not assert any changes in his condition which would necessitate immediate medical treatment, but rather, he consistently complained of pain which was already being treated by Dr. Winchester.

Offender Campbell alleges he had bed bugs and bed bug bites around the beginning of March 2022, and he filed a medical grievance for such on May 6, 2022. (*Id.* at pp. 15, 21.) Offender Campbell asserts he was seen by "Nurse Kyle" who ordered medication on May 6, 2022, but he had not received the medication when "Nurse Kyle" followed up on

May 20, 2022. (*Id*. at p. 21.) The records show that Offender Campbell received Diphenhydramine (Benadryl) 25 mg and Hydrocortisone Cream 1% that same day. (Ex. 1, p. 14.)

Throughout the Amended Complaint, Offender Campbell alleges he was in need of a left total hip replacement; however, he admitted he walked out of his most recent doctor's appointment to hire a different doctor for a second opinion. (Doc. 25, Am. Comp p. 21.) Upon review of Offender Campbell's medical records from Dr. Ali and the VA Hospital, Offender Campbell was seen for an orthopedic consultation on January 26, 2022. (Ex. 3, p. 6.) Offender Campbell and Charlene Chapman, APRN-BC (under the supervision of Dr. Agrawal) discussed the option for a left total hip arthroplasty, and Offender Campbell expressed that he wanted to proceed with the procedure. (Ex. 3, p. 8.) Offender Campbell was referred back to his primary care physician, Dr. Ali, for medical clearance to proceed with surgery. (Ex. 3, p. 9.) Offender Campbell saw Dr. Ali on February 2, 2022, and the records indicate Offender Campbell walked out of the visit before Dr. Ali could even perform a physical examination. (Ex. 3, pp. 1-2.) Dr. Ali requested a urine drug screen in order to prescribe appropriate medications, as Offender Campbell's prior urine drug screen was abnormal. (Ex. 3, p. 4.) Dr. Ali noted Offender Campbell "was so focused on pain meds, he didn't want to answer other q[uestion]s". (Ex. 3, p. 4.) As Dr. Ali tried to explain that the medications are a safety issue, Offender Campbell left the appointment. (Ex. 3, p. 5.) Ultimately, Offender Campbell's left hip replacement surgery was never scheduled due to his own actions of walking out of the appointment with Dr. Ali.

As of February 2, 2022, fourteen days prior to his incarceration at OCDC, Offender Campbell's active medications were Amlodipine 5mg, Cyclobenzaprine 10 mg, and Lisinopril 20 mg. (Ex. 3, p. 3.) Cyclobenzaprine is a muscle relaxant in the same drug class as Methocarbamol. Thus, at the time Offender Campbell filed the original Complaint on May 16, 2022, he was prescribed the same class of medication that he was taking prior to his incarceration.

The investigation of Offender Campbell's Amended Complaint reveals that he was diagnosed with left hip arthritis at least eight years prior to his incarceration, and his condition continued throughout his incarceration at OCDC. (Ex. 3, p. 7.) Offender Campbell was prescribed appropriate medications for his condition which were within the standard of care. Offender Campbell submitted numerous sick calls, requests to staff, medical grievances, and emergency phone calls to camera ops for subjective complaints of pain due to the same medical condition, left hip arthritis, which was already being treated by Dr. Winchester. If an emergent medical situation was observed by OCDC staff, such situation would be documented by a duty officer report. (Ex. 4, p. 2.) A search of duty officer reports reveals that there were no duty officer reports involving Offender Campbell within this his incarceration. (Ex. 5, p. 1.) With regard to Offender Campbell's allegations related to bed bugs, he was seen by medical personnel the same day he submitted a grievance for such. Although Offender Campbell did not receive medication until May 20, 2022, he received appropriate medications which were also within the standard of care.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Although Offender Campbell submitted numerous grievances as referenced above, none of the grievances were appealed to the extent that is required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e. Regardless, Offender Campbell was no longer incarcerated at the OCDC at the time he filed his Amended Complaint.

**POTENTIAL REMEDIAL MEASURES**

In considering whether any remedial measures or actions can or should be taken by the OCDC in response to Offender Campbell's Amended Complaint, the record reveals that there are no actions which can or should be undertaken by OCDC, the Defendants, or any staff of the OCDC, nor any action which should be taken for Offender Campbell. Offender Campbell is no longer incarcerated at the OCDC, and he has not been incarcerated at the OCDC since May 28, 2022.

There is no action to be taken by the OCDC or Turn Key, as the investigation reveals that the policies and procedures of the OCDC are sufficient to ensure that inmates receive appropriate and necessary medical treatment. Additionally, there is no evidence supporting any of the allegations asserted by Offender Campbell that he was denied proper medical care. The actions of the Defendants and Turn Key medical personnel were reasonable, proper, and lawful. Accordingly, there is no action that should be taken by the OCDC or these Defendants to resolve the subject matter of Offender Campbell's Amended Complaint.

## PRIOR RELATED COMPLAINTS

A diligent review of court records indicates that there are no other prior related complaints pending in this Court or any state court that should be considered together with this Amended Complaint.

## SUMMARY AND CONCLUSION

In reviewing the subject matter and allegations contained in Offender Campbell's Amended Complaint on file herein, the undersigned believes Offender Campbell's claims are without merit and no actions should be taken by the Defendants, the Oklahoma County Detention Center, or its personnel at this time. Based upon the investigation and records, the OCDC staff and medical personnel acted reasonably under the circumstances as known or observed by them. There is no evidence of wrongdoing by Defendants or OCDC staff. Thus, Offender Campbell's allegations are without factual support. The undersigned is also not aware of any judicial or administrative findings of any constitutional violations in conduct or policies resulting from complaints similar to those alleged in Offender Campbell's Amended Complaint. Although Offender Campbell also asserted allegations of "Gross and Culpable Negligence", no such cause of action exists before this Court under the circumstances.

The findings and determinations herein are based upon the undersigned's understanding and interpretation of Offender Campbell's Amended Complaint and review of the subject matter, court records, jail records, and information obtained by and from

other OCDC and Turn Key personnel. Based upon this information and record, Plaintiff Michael Campbell's allegations and claims are without factual support.

Respectfully Submitted,

/s/ Raegan Sifferman_____
Raegan D. Sifferman, OBA#31224
SHEARS POWELL & HANNER
710 Cedar Lake Blvd Suite 101
Oklahoma City, OK 73114
Phone:      (405) 200-1911
Facsimile:  (405) 200-1915
Email:      rsifferman@sphlawgroup.com
**Attorney for Oklahoma County Detention Center specially to submit the Special Report**

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2023, I electronically transmitted this document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to parties registered via the ECF system, and a true and correct copy of this document was sent via U.S. Mail, postage prepaid, to the following who is not a registered participant of the ECF system:

Michael Campbell
Inmate #99507509
FMC Lexington [Commonwealth Unit]
3301 Leestown Rd.
P.O. Box 14500
Lexington, KY 40512
*Pro Se Plaintiff*

/s/ Raegan Sifferman
Raegan D. Sifferman