## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHAEL CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-22-399-R |
| | ) | |
| WILLIAM MONDAY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Michael Campbell, appearing *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983, alleging civil rights violations. (ECF No. 25). United States District Judge David L. Russell has referred this matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C).

Pursuant to its obligation to screen prisoner complaints under 28 U.S.C. § 1915A, the undersigned recommends the Court dismiss: (1) Plaintiff's claims for improper denial of medical care under the Oklahoma State Constitution; (2) Claim Two, alleging liability against Turn Key Health (Turn Key) and official and individual capacity liability against Defendants Greg Williams and William Monday, premised on unconstitutional conditions of confinement in violation of the Fourteenth Amendment; (3) Plaintiff's official capacity Fourteenth Amendment claims against Defendants Mark Winchester, Amanda Jackson, and Othello Capehart for deliberate indifference to Plaintiff's serious medical needs; (4) Plaintiff's individual capacity Fourteenth Amendment claims against Defendants Winchester, Jackson, and Capehart seeking injunctive relief for deliberate indifference to Plaintiff's serious medical

needs; (5) Plaintiff's official capacity Fourteenth Amendment claims for monetary damages against Defendants Williams and Monday for deliberate indifference to Plaintiff's serious medical needs; and (6) Plaintiff's individual capacity Fourteenth Amendment claims for injunctive relief against Defendants Williams and Monday for deliberate indifference to Plaintiff's serious medical needs.

Additionally, Defendants Turn Key, Winchester, Jackson, and Capehart have filed a Motion to Dismiss and brief in support. (ECF No. 40).[1] For the reasons set forth herein, it is

---

[1]  The Motion to Dismiss states that it has also been filed on behalf of Becky Pata. *See* ECF No. 40:1. But Mr. Campbell neither named Ms. Pata as a Defendant in the Amended Complaint nor requested summons and service of process for her. *See* ECF No. 25. In the Amended Complaint, Mr. Campbell very specifically delineates the seven defendants in this case and he does not list Ms. Pata. *See* ECF No. 25:4-5 (naming Defendants Monday, Williams, Winchester, Jackson, Capehart, Oklahoma County Criminal Justice Authority, and Turn Key Health). And in the body of the Amended Complaint, in what appears to be a sweeping attempt to hold all seven defendants liable, Plaintiff repeatedly refers to all seven named Defendants, not including Ms. Pata. *See, e.g.*, ECF No. 25:13, 14, 24. In the Amended Complaint, Mr. Campbell references Dr. Pata three times—once in an attempt to bolster his deliberate indifference claim against Dr.  Winchester by stating that Dr. Pata would prescribe medication that Dr. Winchester would not, and twice stating that eventually Dr. Pata was no longer able to prescribe the medication. *See* ECF No. 25:7-8. In his response to the Motion to Dismiss, which was filed on behalf of Dr. Pata, Mr. Campbell delineates Dr. Pata as a Defendant and alleges that she deliberately "intended to teach Plaintiff a lesson" by nearly overdosing him on Subtax. (ECF No. 54:3-4, 9-11). These allegations, however, were absent in the Amended Complaint, *see* ECF No. 25, and the Court should decline to consider the allegations or consider Ms. Pata as a Defendant. *See Scott v. Hormel*, 2019 WL 3935101, at *2 (W.D. Okla. Aug. 20, 2019) ("This Court has held that "Plaintiffs may not amend their Complaint by adding factual allegations … in opposition to a motion to dismiss."); *Plotner v. Hodge*, No. 17–cv–02584–PAB–STV, 2018 WL 2075849, at *4 (D. Colo. Apr. 9, 2018) ("This Court does not consider allegations that are raised for the first time in a response, even by a pro se plaintiff, and [the plaintiff] may not amend his complaint via his Response." (quotations and alteration omitted); *Cox v. Mobilex USA*, No. CIV-16-6-M, 2016 WL 4920185, at *4 (W.D. Okla. Aug. 16, 2016) ("[T]he Court should refuse to consider any new claims that Plaintiff may have attempted to assert in his response to the Motion to Dismiss."), *adopted*, 2016 WL 4916847 (W.D. Okla. Sept. 14, 2016). The undersigned will ignore any portion of the Motion to Dismiss that relates to Ms. Pata.

recommended that the Court: (1) dismiss Plaintiff's individual capacity Fourteenth Amendment claim against Dr. Winchester based on allegations of deliberate indifference owing to a lack of pain medication; (2) dismiss Plaintiff's claims against Turn Key which allege deliberate indifference to his serious medical needs based on Plaintiff's failure to receive his preferred medication and a violation of Equal Protection; (3) conclude that Plaintiff has stated a claim under the Fourteenth Amendment against Defendant Winchester, in his individual capacity, for failing to schedule Plaintiff's surgery, limited to the recovery of monetary damages; (4) conclude that Plaintiff has stated an individual capacity claim against Defendant Jackson for deliberate indifference under the Fourteenth Amendment based on the "gatekeeper" theory of liability, limited to the recovery of monetary damages; (5) conclude that Plaintiff has stated an individual capacity claim against Defendant Capehart for deliberate indifference under the Fourteenth Amendment based on the "failure to treat" theory of liability, limited to the recovery of monetary damages; (6) conclude that Plaintiff has stated a claim against Turn Key under the Fourteenth Amendment based on Plaintiff's allegations that his pain medication was routinely delayed and sometimes denied; and (7) make no finding on Plaintiff's state law negligence claim at this time.

## I.    PLAINTIFF'S AMENDED COMPLAINT AND REQUESTED RELIEF

Mr. Campbell is a pretrial detainee who filed his Amended Complaint alleging constitutional violations at the Oklahoma County Detention Center (OCDC) related to pain in his hip and bedbugs. (ECF No. 25).[2] In the Amended Complaint, the named Defendants

---

[2]  Mr. Campbell is currently housed at the Grady County Jail. *See* ECF No. 32.

fall into two categories: (1) employees of the OCDC, along with the Oklahoma County Criminal Justice Authority (OCCJA) and (2) Turn Key—a private contractor employed to provide medical services to inmates at the OCDC,[3]—and its employees who were working at the OCDC. As for the Oklahoma County Defendants, Plaintiff names: (1) Mr. Monday, administrator; (2) Mr. Williams, administrator; and (3) the OCCJA. (ECF No. 25:4-5). As for the Turn Key Defendants, Plaintiff names: (1) Dr. Winchester, physician; (2) Ms. Jackson, nurse;[4] (3) Mr. Capehart, nurse;[5] and (4) Turn Key. (ECF No. 24:4-5).

In the Amended Complaint, Plaintiff alleges four claims. In Claim One, Plaintiff seeks liability against all Defendants based on allegations of deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment and the Oklahoma Constitution as well as a violation of Equal Protection.[6] *See* ECF No. 25. In Claim Two, Mr. Campbell seeks liability against Defendants Monday, Williams, and Turn Key based on allegations of

---

[3] *See Stewart v. Turn Key Health*, No. 20-957, 2021 WL 5830609, at *2 (W.D. Okla. Nov. 5, 2021).

[4] Throughout the Amended Complaint, Plaintiff refers to Defendant Amanda Jackson as "Amanda LNU." *See, e.g.*, ECF No. 25:4.

[5] Throughout the Amended Complaint, Plaintiff refers to Defendant Othello Capehart as "Othello LNU." *See, e.g.*, ECF No. 25:5.

[6] In the Amended Complaint, Plaintiff also cites the Eighth Amendment in support of his deliberate indifference claim. *See* ECF No. 25:6. Although "[a] prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment," *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000), the deliberate indifference standard applies to pretrial detainees through the Fourteenth Amendment. *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1136 (10th Cir. 2023).

unconstitutional conditions of confinement in violation of the Fourteenth Amendment.[7] *See* ECF No. 25. And in Claim Three, Mr. Campbell alleges negligence under Oklahoma state law against all Defendants. *See* ECF No. 25. Mr. Campbell sues all Defendants in their individual and official capacities and requests monetary and injunctive relief. [8] (ECF No. 25:4-5, 15, 25-26).

## II.    SCREENING

Federal law requires the Court to screen complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss the complaint, or any portion of the complaint, if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or seeks monetary relief from a defendant who is immune from such relief. *Id.* §§ 1915A(b), 1915(e)(2)(B). Pursuant to the Court's screening obligation, the undersigned recommends dismissal of: (1) Plaintiff's claims for improper denial of medical care under the Oklahoma

---

[7]  In the Amended Complaint, Plaintiff also cites the Eighth Amendment in support of his claim regarding unconstitutional conditions of confinement. *See* ECF No. 25:15. But "[b]ecause Mr. [Campbell] was a pretrial detainee, the Due Process Clause governs his claims related to unconstitutional conditions of confinement." *Covalt v. Inmate Services Corporation*, 658 F. App'x 367, 369 (10th Cir. 2016).

[8] An entity working on a county's behalf to perform a county function, such as Defendant Turn Key Health, does not retain an "official or individual capacity" per se, but instead can be found liable under a theory of municipal liability as outlined in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) In *Monell*, the Court held that a municipality can be held liable for constitutional violations committed pursuant to official policy or custom. ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

State Constitution; (2) Claim Two involving unconstitutional conditions of confinement; (3) the official capacity claims for deliberate indifference against Defendants Winchester, Jackson, and Capehart; (4) the individual capacity claims for deliberate indifference seeking injunctive relief against Defendants Winchester, Jackson, and Capehart; (5) the official capacity claims for monetary relief against Defendants Williams and Monday; and (6) the individual capacity claims against Defendants Williams and Monday seeking injunctive relief.

**A.** **Claims for Denial of Medical Care Under the Oklahoma State Constitution**

Liberally construed, Mr. Campbell alleges that all of the Defendants[9] failed to provide him adequate medical care under Article II, §§ 7 & 9 of the Oklahoma Constitution. *See* ECF No. 25:6.[10] The Court should dismiss these claims.

Article 2, § 9 of the Oklahoma Constitution is virtually identical to the Eighth Amendment to the United States Constitution; § 9 prohibits "cruel or unusual punishments," while the Eighth Amendment prohibits "cruel and unusual punishments." Likewise, both the state and federal Due Process Clauses prohibit a state from depriving any person of "life,

---

[9]   The undersigned liberally construes the state constitutional claim as asserted against all Defendants. Mr. Campbell mentions the constitutional provisions in connection with "Claim 1" as listed on page 6 of the Amended Complaint, and as "parties" to that claim, Plaintiff names Defendants Monday, Williams, the OCCJA, Turn Key, and Dr. Winchester. (ECF No. 25:6). However, throughout the Amended Complaint, Plaintiff repeatedly refers to deliberate indifference allegedly committed by all seven defendants, thus the liberal interpretation of all parties against whom this claim is asserted. *See* ECF No. 25.

[10]   Mr. Campbell also mentions Section 8 of Article II, but Plaintiff fails to present a challenge which would arguably implicate this section, which lists exceptions to the right to bail. *See* Okla. Const. art. 2, § 8; ECF No. 25.

liberty, or property, without due process of law." U.S. Const. amend. XIV; Okla. Const. art. 2, § 7.

Although not expressly cited by Plaintiff, in *Bosh v. Cherokee Bldg. Auth.*, 305 P.3d 994*,* the Oklahoma Supreme Court recognized a private right of action by a pretrial detainee for excessive force under the Oklahoma Constitution. *Bosh* did not, however, recognize the claim asserted by plaintiff in this case—which seeks to extend *Bosh's* holding to a claim alleging improper denial of medical care. *See id.* Moreover, since *Bosh*, the Oklahoma Supreme Court has continued to narrow its holding. *See, e.g., Perry v. City of Norman*, 341 P. 3d 689, 692-93 (Okla. 2014); *Barrios v. Haskell Cty. Pub. Fac. Auth'y*, 432 P.3d 233 (Okla. 2018) (declining to extend *Bosh* to inmate denial of medical claims under the Oklahoma constitution and stating "even if not barred by sovereign immunity . . . it is doubtful that such claims would exist in the Oklahoma common law").

Likewise, the federal courts in Oklahoma have also declined to extend *Bosh* to other constitutional claims. *See Plunkett v. Armor Correctional Health Services*, Inc., No. 18-cv-125, 2022 WL 997357, at *6 (N.D. Okla. Apr. 1, 2022), *abrogated on other grounds* by *Lucas v. Turn Key Health Clinics*, LLC, 58 F. 4th 1127 (10th Cir. 2023); *Young v. Glanz*, No. 13-CV-315-JED-JFJ, 2020 WL 5937899, at *7 (N.D. Okla. Oct. 6, 2020); *Revilla Guerrero v. Glanz*, No. 13-CV-315-JED-JFJ, 2020 WL 5834794, at *5 (N.D. Okla. Sept. 30, 2020); *Dodson v. Cty. Comm'rs of Mayes Cty.*, 18-CV-221-TCK-FHM, 2019 WL 2030122 (N.D. Okla. May 8, 2019); *Burke v. Regalado*, 18-CV-231-GKF-FHM, 2019 WL 1371144, *3 (N.D. Okla. Mar. 26, 2019); *Payne v. Oklahoma*, No. CIV-15-10-JHP, 2015 WL 5518879, at **3-4 (E.D. Okla. Sept. 17, 2015); *Snow v. Board of County Commissioners of the County of McClain*, No. CIV-

14-911-HE, 2014 WL 7335319, at *3 (W.D. Okla. Dec. 19, 2014); Based on the narrow holding of *Bosh* and the federal courts' refusal to extend its holding, the Court should dismiss Plaintiff's state constitutional claims asserted against all Defendants. *See Burke*, 2019 WL 1371144, at *3 (granting motion to dismiss plaintiff's claim for denial of medical care under Sections 7 & 9 of Article II of the Oklahoma Constitution for failure to state a claim).

### B.    Claim Two

In Claim Two, Plaintiff alleges unconstitutional conditions of confinement due to "bed bugs . . . [and] bed bug bites . . . [and] bed bug eggs inside my arm (right) crawling." (ECF No. 25:15). According to Plaintiff, his cell was infested with bed bugs which allegedly laid eggs in his arm which he would pop out, causing green and yellow slime to gush from his arm and "some time[s] when [he] popped one out, [he] could see it move on its own accord." (ECF No. 25:23). For this claim, Mr. Campbell seeks liability against Turn Key and Defendants Monday and Williams, in their official and individual capacities.[11] *See* ECF No. 25:15, *see supra*. These claims should be dismissed.

### 1.    Official Capacity Claims Against Defendants Williams and Monday and Claim Against Turn Key

If a defendant is sued under § 1983 in his or her official capacity, the suit is generally treated as one against the governmental entity that the defendant represents. *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985). Here, the relevant entity is Oklahoma County, who employs Defendants Williams and Monday, thereby implicating municipal liability. To

---

[11]  Mr. Campbell also named the Oklahoma County Detention Center as a Defendant, but it is no longer a party to this action. *See* ECF No. 25:15; *see* Docket Sheet (noting termination of the OCDC as a Defendant on September 14, 2022).

establish municipal liability under § 1983, a plaintiff must first identify an official policy or custom of the municipality, whether enacted or maintained by its legislative body or an authorized decisionmaker. *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 769–70 (10th Cir. 2013). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Id.* at 770. Liability against Turn Key is likewise founded on the principles of municipal liability and requires allegations of an official policy or custom. *See Lucas*, 58 F.4th at 1144.

Here, in relation to Claim Two, Plaintiff has failed to allege any official custom or policy implemented by either Oklahoma County or Turn Key which caused the bedbug situation. *See* ECF No. 25. Thus, the Court should dismiss the official capacity claims against Defendants William and Monday as well as the claim asserted against Turn Key, as outlined in Claim Two.

### 2.    Individual Capacity Claims Against Defendants Williams and Monday

The Court should also dismiss the individual capacity claims against Defendants Williams and Monday predicated on the bedbug infestation.

In Claim Two, Plaintiff describes the bed bug situation and states that he received treatment in the form of cream and "medication" after complaining to "Nurse Kyle." (ECF No. 25:23). Plaintiff states that he submitted mental health and sick call requests, but that he "was never seen." (ECF No. 25:23). As named "Administrators" of the OCDC, the

undersigned presumes that Plaintiff's claims against Defendants Monday and Williams are premised on their alleged supervisory role. But "a supervisor may only be held liable under Section 1983 if he is affirmatively linked to the constitutional violation." *Hickey v. Oklahoma Cnty. Det. Ctr.*, No. CIV-20-1291-R, 2022 WL 1221645, at \*5-6 (W.D. Okla. Feb. 23, 2022), *adopted*, 2022 WL 945319 (W.D. Okla. Mar. 29, 2022). "Section 1983 does not authorize liability under a theory of *respondeat superior.*" *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). So, prison officials have no vicarious liability in a § 1983 suit for the misconduct of their subordinates because "there is no concept of strict supervisor liability under section 1983." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).

Instead, a supervisor is liable only if he is "personally involved in the constitutional violation, and a sufficient causal connection [ ] exist[s] between the supervisor and the constitutional violation." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (quotations omitted); *see also Schneider*, 717 F.3d at 767 (requiring a plaintiff to show an "affirmative link" between the supervisor and the constitutional violation). "Thus, [ ] Plaintiff must base supervisory liability 'upon active unconstitutional behavior' and 'more than a mere right to control employees.' " *Davis v. Oklahoma County*, No. CIV-08-0550-HE, 2009 WL 2901180, at \*4 (W.D. Okla. Sept. 3, 2009) (quoting *Serna*, 455 F.3d at 1153). As stated, Plaintiff's individual capacity claims against Defendants Williams and Monday related to the unconstitutional conditions of confinement with the bed bug infestation appear to turn on their alleged supervisory roles. But because Plaintiff does not allege that either Defendant was personally involved with the allegedly unconstitutional prison conditions, the Court should dismiss the individual capacity claims against Defendants Williams and Monday as

set forth in Claim Two. *See Trujillo v. Williams*, 465 F.3d 1210, 1227-28 (10th Cir. 2006) (upholding dismissal of § 1983 claims because "[n]othing in [plaintiff's] complaint indicates any personal participation by the New Mexico defendants in determining the amount of food [plaintiff] received at the Virginia prison").[12]

### C.    The Official Capacity Claims and the Individual Capacity Claims for Injunctive Relief Against Defendants Winchester, Jackson, and Capehart

As stated, Plaintiff sues Defendants Winchester, Jackson, and Capehart in their official and individual capacities and seeks monetary and injunctive relief. *See supra*. But Defendants Winchester, Jackson, and Capehart are employees of Turn Key Health, a private entity. *See supra*; ECF No. 40:14. As such, these Defendants are "not state officials, and official capacity claims cannot be asserted against them." *AlAmiin v. Patton*, No. CIV-13-1001-F, 2016 WL 7217857, at *6 n.6 (W.D. Okla. Dec. 13, 2016) (citing *Jones v. Barry*, 33 F. App'x 967, 971 n.5 (10th Cir. 2002)). Thus, the Court should dismiss Plaintiff's official capacity claims against these individuals for failure to state a claim upon which relief may

---

[12] In response to the Motion to Dismiss, Plaintiff states he "alerted medical and the security administrators [Mr. Monday and Mr. Williams] of his serious medical, inhumane situation and condition, but both were deliberately indifferent to Plaintiff's serious medical needs and inhumane situation!" (ECF No. 54:5). But these allegations are insufficient to state a claim as they represent the precise type of "conclusory" and "formulaic recitation of the elements of a constitutional claim" rejected by the United States Supreme Court. *See Iqbal*, 556 U.S. at 681 (rejecting allegations that defendants " 'knew of, condoned, and willfully and maliciously agreed to subject [plaintiff]' to harsh conditions of confinement.").

be granted. *See id*.; 28 U.S.C. § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1).[13] With this

dismissal, Plaintiff's individual capacity claims against these Defendants remain. As stated,

Plaintiff has sought both monetary and injunctive relief against Defendants Winchester,

Jackson, and Capehart. *See supra*. However, the Tenth Circuit Court of Appeals has long

held that "Section 1983 plaintiffs may sue individual-capacity defendants only for money

damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662

F.3d at 1161 n.5. As a result, the Court should dismiss, with prejudice, the individual capacity

claims against Defendants Winchester, Jackson, and Capehart which seek injunctive relief.

### D. The Official Capacity Claims for Monetary Relief and the Individual Capacity Claims for Injunctive Relief Against Defendants Williams and Monday

Based on the holding in *Brown*, *supra*, the Court should dismiss the Fourteenth

Amendment official capacity claims for monetary relief against Defendants Williams and

---

[13] In their Motion to Dismiss, Defendants Winchester, Jackson, and Capehart seek dismissal of the official capacity claims, arguing that no liability exists absent allegations that they had acted pursuant to a policy or custom which directly caused Plaintiff's alleged injury. (ECF No. 40:20-21). But the Court rejects this argument, as it is only valid for state actors, not employees of a private contractor such as Defendants Winchester, Jackson, and Capehart. For these Defendants, official liability cannot be found, even if Plaintiff had alleged that they had been acting pursuant to a policy or custom. *See supra*, *AlAmiin v. Patton* (noting that no official capacity liability exists for private, as opposed to state, employees, or actors).

Monday as well as the individual capacity claims for injunctive relief against these Defendants.[14]

## III.   REMAINING CLAIMS

With the recommended dismissals, what remains are Plaintiff's: (1) individual capacity claims for deliberate indifference under the Fourteenth Amendment against Defendants Winchester, Jackson, Capehart, limited to the recovery of monetary damages; (2) deliberate indifference claim against Turn Key Health; (3) claims of negligence under state law against all Defendants; (4) individual capacity claims under the Fourteenth Amendment for monetary damages and official capacity claims under the Fourteenth Amendment for injunctive relief against Defendants Monday and Williams; and (5) claims against the OCCJA.

## IV.   DEFENDANT'S MOTION TO DISMISS

Defendants Winchester, Jackson, Capehart and Turn Key have filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 40).[15] In the Motion to Dismiss, these Defendants advance four arguments: (1) Plaintiff has failed to satisfy the objective component of the deliberate indifference test regarding the individual capacity

---

[14] Defendants Monday and Williams, along with the OCCJA, have filed two Motions to Dismiss the Amended Complaint—one asserted by the OCCJA and Defendants Williams and Monday in their official capacities (ECF No. 60) and one asserted by Defendants Williams and Monday in their individual capacities (ECF No. 61). If this recommendation is adopted, the state negligence claims against the OCCJA and Defendants Williams and Monday will remain, along with claims for deliberate indifference in violation of the 14th Amendment against: (1) the OCCJA and (2) Defendants Williams and Monday in their individual capacities for monetary damages and in their official capacities for injunctive relief. Plaintiff has been ordered to respond to the motions by October 20, 2023, and following a ruling on this recommendation, the undersigned will address the remaining claims.

[15] On page one of the motion, the Turn Key Defendants reference dismissal pursuant to Federal Rule of Civil Procedure 4. (ECF No. 40:1). But Rule 4 is not thereafter mentioned in the body of the motion. *See* ECF No. 40.

claims against Defendants Winchester, Jackson, and Capehart; (2) Plaintiff has failed to satisfy the subjective component of the deliberate indifference test regarding the individual capacity claims against Defendants Winchester, Jackson, and Capehart; (3) Plaintiff has failed to state a claim against Defendant Turn Key Health under a theory of municipal liability; and (4) Defendants are immune from liability on Plaintiff's state law negligence claim. The Court should grant the motion in part, as discussed below.

### A.      Standard of Review for Motion to Dismiss

In ruling on Defendant's motion, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to . . . [P]laintiff." *Thomas v. Kaven,* 765 F.3d 1183, 1190 (10th Cir. 2014) (citation omitted). To survive dismissal, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct," then the plaintiff has not "nudged (his) claims across the line from conceivable to plausible." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma,* 519 F.3d 1242, 1248 (10th Cir. 2008). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility. . . ." *Iqbal,* 556 U.S. at 662 (internal quotation marks and citation omitted).

A complaint fails to state a claim when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. (footnote and citation omitted). Bare legal conclusions in a complaint are not assumed to be true; legal conclusions "must be supported by factual allegations" to state a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 662.

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Gee v. Pacheco*, 627 F.3d 1178, 1184-85 (10th Cir. 2010) (discussing *Iqbal*).

### B.   Legal Framework for Claims of Deliberate Indifference— Individual Capacity Claims Against Defendants Winchester, Jackson, and Capehart

As stated, the deliberate indifference standard applies to pretrial detainees, such as Mr. Campbell, through the Fourteenth Amendment. *See supra*, *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th at 1136. Deliberate indifference contains both an objective and subjective component. *Id.* The objective component is satisfied if the deprivation is "sufficiently serious." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.*

The standard for the subjective component is that the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 1137 (citing *Farmer*, 511 U.S. at 837). The official must be aware of the facts from which the inference of a substantial risk of serious harm could be drawn and also draw that inference. *Id.* A plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate," but rather that the official "merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence" such as whether "the risk was obvious." *Id.* An official disregards risk when he fails to take reasonable measures to abate the risk. *Id.* A claim that a course of treatment was inadequate after the exercise of medical judgment, absent an extraordinary degree of neglect does not rise to disregard of serious medical need. *Id.* (citing *Self v. Crum*, 439 F.3d 1227, 1232, 1234 (10th Cir. 2006)).

The subjective component of the deliberate indifference test can be satisfied in two ways: failure to properly treat a serious medical condition ("failure to properly treat theory") or as a gatekeeper who prevents an inmate from receiving treatment or denies access to someone capable of evaluating the inmate's need for treatment ("gatekeeper theory"). *Id.* The latter theory can apply to medical professionals when the professional knows that his

16

or her role in a medical emergency is solely to refer the patient to another. *Id.* Even a brief

delay in treatment can be unconstitutional. *Id.*

### C. Plaintiff's Claims of Deliberate Indifference Against Defendants Winchester, Jackson, and Capehart in Their Individual Capacities

In the Motion to Dismiss the individual capacity claims against Defendants

Winchester, Jackson, and Capehart, these Defendants argue that Plaintiff has failed to

satisfy both the objective and subjective components of the deliberate indifference test. *See*

ECF No. 40:13-16. Defendants' argument has merit, but only with regards to the medication

claim against Defendant Winchester, as discussed below.

### 1. The Objective Component

The Defendants argue that Mr. Campbell has "failed to plead sufficient allegations to

establish the objective component of the deliberate indifference test." (ECF No. 40:11).

According to the Turn Key Defendants:

> Taking Plaintiff's allegations as being true, Plaintiff suffered from severe degenerative joint disease prior to incarceration at the Oklahoma County Jail, but he was not scheduled for any hip replacement surgery at the time of his arrest (and, in fact, was seeking a second opinion as to the necessity of the same). Thus, Plaintiff did not suffer any deterioration in condition or substantial harm during his incarceration due to the alleged denial of an elective orthopedic surgery. Instead, Plaintiff's allegations are that he came in with severe degenerative joint disease in his hips, and that he continues to have severe degenerative joint disease in his hips.

> Inasmuch as Plaintiff is arguing that Defendants caused a delay in scheduling his elective degenerative hip surgery, Plaintiff has failed to sufficiently plead facts to show that there was any delay caused by Turn Key staff, including Dr. Winchester, which resulted in substantial harm. Plaintiff has failed to meet his pleading burden because he has not pled any facts to suggest that he suffered any harm, let along [sic] substantial harm. Nor has Plaintiff alleged that he suffered from considerable pain. Accordingly, Plaintiff fails to allege facts from which to reasonably infer that he has suffered a

sufficiently serious harm to satisfy the objective component of a constitutional claim.

(ECF No. 40:12). For two reasons, the Court should reject Defendants' argument regarding the objective component of the deliberate indifference test.

First, Defendants seem to believe that because Plaintiff was not scheduled for hip replacement surgery at the time of his arrest, "he did not suffer any deterioration in condition or substantial harm during his incarceration due to the alleged denial of an elective orthopedic surgery." (ECF No. 40:12). Defendants fail to explain this outlandish theory, however, and the undersigned is pressed to find the logic therein. Failure to schedule a medical procedure has little, if anything, to do with whether Plaintiff's degenerative joint disease worsened or whether Plaintiff suffered harm related to the condition while incarcerated. And Defendants' use of the term "elective" when referring to Mr. Campbell's surgery, whether scheduled or not, is contemptuous in light of: (1) Plaintiff's allegations of excruciating pain and (2) the fact that nowhere in the Amended Complaint did Plaintiff ever state that his hip surgery was optional.[16]

Second, whether Plaintiff has sufficiently pled facts to show that any Defendant had delayed scheduling his hip surgery which caused substantial harm, is irrelevant to whether, objectively, Mr. Campbell suffered from a "sufficiently serious" medical need. All that is required to satisfy this component is that the medical need "has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would

---

[16] In fact, Plaintiff characterized the surgery as "necessary." (ECF No. 25:21).

easily recognize the necessity for a doctor's attention." *See supra*, *Lucas*. Here, Mr. Campbell alleged that he "was under Dr. Ali's care at the V.A. Hospital in OKC, Okla., and . . . [he] had been seen during pre-opt [sic] by the orthopedic surgeon who was scheduled to perform my much needed surgery." (ECF No. 25:6-7). These allegations alone satisfy the objective component of the deliberate indifference test. Furthermore, Defendants' statement that Mr. Campbell has not alleged "that he suffered from considerable pain" is an obvious misrepresentation of the record.[17] (ECF No. 40:12). *See* ECF No. 25:6 (Plaintiff referring to his "daily suffering excruciating pain"); ECF No. 25:7 ("excruciating pain daily"); ECF No. 25:9 ("I was bedridden with so much pain"); ECF No. 25:10 ("My pain was so severe that I could not lift myself out of the bed"); ECF No. 25:11 ("On March 12, 2022, @5:47 I experienced extreme severe pain"); ECF No. 25:12 ("April 1, 2022, my pain was crippling and I could not even lift myself out of bed"); ECF No. 25:14 ("excruciating pain . . . daily"); ECF No. 25:15 ("I need relief from this excruciating pain I'm experiencing daily"); ECF No. 25:17 (describing "extremely severe pain"); ECF No. 25:18 ("I am still experiencing terrible pain"); ECF No. 25:19 ("I was bedridden with pain"); ECF No. 25:24 ("excruciating daily pain"); ECF No. 25:26 ("excruciating pain").

### 2.   The Subjective Component

Defendants argue that Mr. Campbell has failed to present allegations sufficient to satisfy the subjective component of the deliberate indifference test. (ECF No. 40:14-16). To analyze this argument, the undersigned will consider each individual Defendant, in turn.

---

[17] Counsel is cautioned to scrupulously avoid such blatant misrepresentations in the future. Fed. R. Civ. P. 11.

### a.   Dr. Winchester

In two ways, Plaintiff alleges that Dr. Winchester was deliberately indifferent to his serious medical needs regarding pain associated with his hip. (ECF No. 25:7-10, 12, 14-16, 19, 20). According to Mr. Campbell, Dr. Winchester knew that prior to his incarceration, Plaintiff had been treated for degenerative disease in his hip and was scheduled for hip replacement surgery. (ECF No. 25:7). Mr. Campbell states once he was incarcerated, although Dr. Winchester independently determined that Plaintiff needed a hip replacement, the physician failed to: (1) make any attempts to schedule Plaintiff for surgery or (2) provide him with proper pain medication. (ECF No. 25:7, 15-16, 18). *See* ECF No. 25:7, 15-16 ("Dr. Winchester refused to provide me with anything for my pain except common aspirins, or that which was the equivalent thereof" and "made no attemts [sic] to get or aide [Plaintiff] in getting the surgery[.]"). Plaintiff believes that Dr. Winchester deliberately lied to him about not being able to prescribe any stronger pain medication, because he later received "Tylenol #4" to treat his pain when he was transferred to the Cleveland Co. Detention Center. (TR. 25:7). However, Mr. Campbell also states that Dr. Winchester told him that stronger pain medication "was not authorized in th[e] [OCDC.]" (ECF No. 25:18).

Regarding the alleged surgery, Defendant Winchester contends that Plaintiff did not have a surgery scheduled, as evidenced by Plaintiff's admission that he walked out of his final VA doctor's appointment to get a second opinion. ECF No. 40:14. In what appears to be a self-explanatory assertion, Defendant Winchester then states: "Thus, Plaintiff's own allegations are that he did not have a hip replacement surgery scheduled or even tentatively scheduled prior to incarceration. Plaintiff does not allege that Dr. Winchester . . . failed to

provide him with treatment or care." (ECF No. 40:14). Once again, Defendant has missed the mark. Although Mr. Campbell admittedly walked out of his final doctor's appointment at the VA, *see* ECF No. 25:21, Plaintiff also stated that he had been scheduled for surgery, *see* ECF No. 25:6-7, and the two statements are not necessarily incompatible, as Defendant Winchester would suggest. Mr. Campbell may have been scheduled for surgery, but for whatever reason, he was also seeking a second opinion prior to his arrest. As stated, Mr. Campbell alleges that Defendant Winchester *himself* made an independent determination that Plaintiff needed a total hip replacement and then failed to follow through and schedule the surgery. *See* ECF No. 25:15. Thus, Plaintiff's reason for seeking a second opinion is irrelevant to whether Dr. Winchester deliberately failed to scheduled surgery for Plaintiff which he, the physician, had found to be warranted. Thus, the Court should conclude that Plaintiff has stated a claim under the Fourteenth Amendment against Defendant Winchester, in his individual capacity, for failing to schedule Plaintiff's surgery, limited to the recovery of monetary damages. *See Rutherford v. Medical Dept. of Dept. of Corrections*, 76 F. App'x 893, 902 (10th Cir. 2003) ("We conclude that [the plaintiff] stated a claim for deliberate indifference to serious medical needs by alleging that the medical staff members . . . failed to schedule prescribed  . . . surgery.").

Regarding the pain medication, Defendant Winchester argues that Plaintiff's allegations amount to nothing more than a disagreement about the type of pain medication Dr. Winchester provided to Plaintiff. *See* ECF No. 40:15-16. Defendant's argument has merit.

In the Amended Complaint, Plaintiff alleged that Defendant Winchester "refused to provide [him] with anything for [his] pain except common aspirins, or that which was the

equivelent [sic] thereof." (ECF No. 25:7). Plaintiff speculated that Dr. Winchester was lying to him, because he received stronger medication at a different facility, but Mr. Campbell also admitted that Dr. Winchester told Plaintiff that the "aspirin-type" medication was all that was authorized at the OCDC. *See* ECF No. 25:7, 18. In his response to the Motion to Dismiss, Plaintiff once again alleges that Dr. Winchester prescribed an inferior pain medication, but according to Mr. Campbell, Dr. Winchester stated "that's the best he could do for the Plaintiff," while additionally prescribing him an extra mattress and a walker. (ECF No. 54:7).

As stated, the standard for the subjective component is that the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 1137 (citing *Farmer*, 511 U.S. at 837). By Plaintiff's own admission, Dr. Winchester was constrained to prescribe the medication Mr. Campbell was seeking. *See* ECF No. 25:18 ("Dr. Winchester . . . stated that the pain management mediation [sic] necessary for my level of pain was not authorized in this institution. He said he would prescribe something for my pain, not much more potentant [sic] than aspirin, but that was the best he could do."). The Tenth Circuit Court of Appeals has held that a "prescription of substitute medication for [an inmate] does not demonstrate deliberate indifference" because "a prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *See Boyett v. Cnty. of Washington,* 282 F. App'x 667, 674, 2008 WL 2483286, at *6 (10th Cir. 2008) (citing *Callahan v. Poppell,* 471 F.3d 1155, 1160 (10th Cir. 2006)); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (noting that plaintiff's allegations indicate not a lack of medical treatment, but a disagreement with the doctor's

medical judgment in treating a condition with a certain medication rather than others); *Hood v. Prisoner Health Services, Inc.*, 180 F. App'x 21, 25, 2006 WL 1230688, at *2 (10th Cir. 2006) (affirming the district court's finding of no deliberate indifference because "an appropriate non-narcotic medication has been offered as an alternative to the narcotic medication prescribed prior to plaintiff's incarceration."); *see generally Perkins v. Kansas Dep't of Corrs.,* 165 F.3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.").

Based on the foregoing, the Court should dismiss Plaintiff's individual capacity Fourteenth Amendment claim against Dr. Winchester based on allegations of deliberate indifference owing to a lack of preferred pain medication.

### b.   Defendant Jackson

Plaintiff alleges that on April 1, 2022, Defendant Jackson was called to his cell by correctional officers who observed Plaintiff lying in bed unable to walk to the cell door to receive his medication. (ECF No. 25:9). According to Mr. Campbell, Defendant Jackson examined Plaintiff, told him he needed a doctor, and stated that she would return with one. (ECF No. 25:9). Plaintiff alleges that Ms. Jackson neither treated his pain nor returned with medical help, but instead, "[s]he just left me laying there. Neither her nor a doctor ever returned, I was forced to endure such treatment for my serious medical need." (ECF No. 25:9); *see also* ECF No. 25:19 (same); ECF No. 25:12 ("April 1, 2022, my pain was crippling and I could not even lift myself out of bed and nurse Amanda LNU, left me in bed, no medicine, but a promise to return with the doctor and she never returned . . . and . . . I was forced to lay there in bed and shed tears as I suffered!").

In arguing that Plaintiff's allegations fail to state a claim for deliberate indifference, Defendant Jackson states: "Plaintiff's criticism is only that Ms. Jackson did not *immediately* return with a doctor when she assessed him—not that he was denied access to a doctor or failed to see a doctor." (ECF No. 40:15) (emphasis in original). Defendant Jackson's argument is disingenuous, because Plaintiff never states that Defendant Jackson returned some time later with a doctor, as Defendant Jackson implies, but that "she *never* returned[.]" *See supra* (emphasis added). Indeed, in his response to Defendant Jackson's argument, Mr. Campbell states that after examining him, Defendant Jackson "became alarmed and said: 'You need a doctor now, I'll be right back.' She ran out quickly, but neither her nor a doctor came back that day, Plaintiff layed [sic] there suffering excruciating pain and was never seen by a doctor until April 14, 2022." (ECF No. 54:8).

As stated, the subjective component of the deliberate indifference test can be satisfied under a "gatekeeper theory" which occurs when the medical professional knows that his or her role in a medical emergency is solely to refer the patient to another. *See supra, Lucas.* As noted by the Tenth Circuit Court of Appeals, "[e]ven a brief delay in treatment can be unconstitutional." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th at 1136. As a result, the Court should conclude that Plaintiff has stated an individual capacity claim against Defendant Jackson for deliberate indifference under the Fourteenth Amendment based on the "gatekeeper" theory of liability, limited to the recovery of monetary damages.

## C.    Defendant Capehart

Plaintiff's allegations against Defendant Capehart are two-fold: (1) that Defendant Capehart delayed getting Plaintiff his pain medication and (2) that when Defendant Capehart

arrived at Plaintiff's cell to deliver the medication (late), he refused to give it to Mr. Campbell. According to Plaintiff, on April 26, 2022, Defendant Capehart came to Plaintiff's cell to deliver medication at approximately midnight, which was approximately 7 hours late. (ECF No. 25:9-10). Mr. Campbell alleges that due to the delay, his pain "was so severe that [he] could not lift [himself] out of the bed" to walk to the cell door to receive his medication. (ECF No. 25:10). According to Mr. Campbell, Defendant Capehart "stood in the doorway with [Plaintiff's] medication in his hands and told [Plaintiff] to get up or no meds." (ECF No. 25:10). According to Plaintiff, Defendant Capehart "laughed and joked as [Plaintiff] laid there in severe pain" before walking off. (ECF No. 25:10, 20).

Defendant Capehart fails to address the delay claim, but instead focuses only on Plaintiff's allegations that he denied Plaintiff medication. According to Defendant Capehart, Plaintiff's allegations are insufficient to state a claim for deliberate indifference because "due to safety reasons" Mr. Capehart "could not walk Plaintiff's medications to him in his cell due to jail policy." (ECF No. 40:15). Defendant Jackson may be correct, but he has not cited any particular "jail policy" in support of such proposition, nor would doing so be appropriate in a Motion to Dismiss. At this stage, all the Court is concerned with is whether Plaintiff has sufficiently alleged that Defendant Capehart acted with deliberate indifference—i.e.—that he "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *See supra*, *Lucas*, at 1137. Thus, at this juncture, the Court should conclude that Mr. Campbell has stated two Fourteenth Amendment claims against Defendant Capehart in his individual capacity limited to the recovery of monetary damages—based on the delay in bringing Plaintiff his medication and his ultimate outright refusal to Plaintiff of the same.

### D. Plaintiff's Claim Against Turn Key

Mr. Campbell alleges liability against Defendant Turn Key based on: (1) deliberate indifference under the Fourteenth Amendment for failing to receive his preferred pain medication, a routine delay in receiving his pain medication, and a complete lack of pain medication and (2) a violation of Equal Protection. *See* ECF No. 25. Turn Key has filed a Motion to Dismiss, arguing that Plaintiff has failed to state a claim for relief. *See* ECF No. 40. The Court should grant Turn Key's motion, in part.

### 1. Legal Framework for Liability Against Turn Key

Before turning to whether Mr. Campbell has sufficiently alleged a constitutional violation, the Court must first consider whether a corporation—such as Turn Key—can be considered a "person" subject to liability under § 1983, and, if so, under what theory. In *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the Supreme Court held that a municipality is "included among those persons to whom § 1983 applies," but it cannot be held liable under § 1983 solely because it employs a tortfeasor *(i.e.,* pursuant to a *respondeat superior* theory). *Id.* at 690-91. Rather, a municipality can be held liable under § 1983 only if it has an "official municipal policy of some nature" that " 'causes' an employee to violate another's constitutional rights." *Id.* at 691-92. The Tenth Circuit has held that *Monell's* municipal liability theory applies equally to private entities acting under color of state law, such as Turn Key. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 n.13 (10th Cir. 2003). Indeed, very recently, the Tenth Circuit has affirmed that Turn Key itself may be liable under a theory of *Monell* municipal liability. *See supra, Lucas v. Turn Key Health Clinics*.

Thus, to state a claim against a municipal entity such as Turn Key, Mr. Campbell must allege facts showing: (1) an official policy or custom, (2) causation, and (3) deliberate indifference. *Luca v. Turn Key Health,* 58 F. 4th at 1145. Any of the following constitute an official policy:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Id.*

### 2.    Plaintiff's Allegations Against Turn Key

Mr. Campbell alleges that customs, practices, and policies of Turn Key were directly responsible for the deliberate indifference to his serious medical needs and a violation of Equal Protection. For example, Plaintiff alleges that Dr. Winchester "refused to provide [Plaintiff] with anything for [his] pain except common aspirins, or that which was the equivalent thereof." (ECF No. 25:7). While he specifically alleges that this was a "personal decision" made by Dr. Winchester, Mr. Campbell also implies that the decision was owing to a policy implemented by Turn Key. *See* ECF No. 25:8 (allegations that Turn Key Health, pursuant to their "policies and customary practices" "will not allow [their employees] to prescribe the definitely needed pain management medication [Plaintiff] so desperately need[s]."); *see also* ECF No. 54:11 ("Dr. Winchester repeatedly stated that Turnkey Health's policy would not allow him to treat Plaintiff's pain with medication that was much more

stronger than an aspirin."). Plaintiff also alleges that Turn Key Health violated the Equal

Protection Clause by refusing to provide him with his preferred medication. *See* ECF No.

25:8 ("Turnkey Health has and continue[s] . . . to deliberately treat me indifferent to other

patients whom have a severe degenerative disease, in need of total hip joint replacement.");

ECF No. 25:9 ("Turnkey Health . . . deliberately treat[s] me as indifferent from other people

with 'severe degenerative diseases requiring hip joint replacement surgery."); ECF No. 25:24

("I witnessed other patients on the same medical unit I was on receive narcotics daily.").

But as argued by Defendant Turn Key, these allegations are conclusory, at best, and

fail to cite a particular policy responsible for either: (1) the medication choice or (2) a

violation of Equal Protection. Accordingly, the Court should conclude that Plaintiff has failed

to state a claim against Defendant Turn Key for failing to provide Plaintiff with his preferred

medication or violating his Equal Protection rights. *See Lucas v. Turn Key Health Clinics,*

*LLC*, 58 F.4th at 1146 ("Conclusory allegations without facts that refer to a particular person

or persons treated differently are insufficient to state a claim [of Equal Protection.]");

*Dalcour v. City of Lakewood*, 492 F. App'x 924, 930 (10th Cir. 2012) ("To survive a motion

to dismiss, [a municipal liability] claim must allege sufficient facts to show that

a *specific* policy or custom was the moving force behind the alleged violation.") (emphasis

added); *Woodson v. Armor Correctional Health Services, Inc.*, No. 20-CV-00186-RM-KMT,

2021 WL 1300596, at *11 (D. Colo. Feb. 8, 2021) (recommending dismissal of municipal

liability claim because "the pleadings fail to identify any *specific* custom, policy, or practice,

formal or informal, that was the "moving force" behind the alleged deprivation of Plaintiff's

constitutional rights.") (emphasis in original), *adopted*, *Woodson v. Armor Correctional*

28

*Health Services, Inc.*, No. 20-CV-00186-RM-KMT, 2021 WL 1050009, at *1 (D. Colo. Mar.

19, 2021); *Allen v. Geo Grp., Inc.*, No. 20-CV-00179-MEH, 2020 WL 5500454, at *3-4 (D.

Colo. Sept. 11, 2020) (finding allegations regarding prison healthcare providers' "improper

policies" to be conclusory, and thus, insufficient to establish liability under § 1983, where

the complaint merely alleged that "[it] was Defendants' policy, custom, or practice to make

inmates suffer by not providing adequate medical care[,] . . . [and] to deny medical care

even when objective signs and symptoms warranted additional care").

Additionally, Plaintiff alleges that policies of Turn Key are responsible for Defendant

Capehart delaying the delivery of his medication for approximately 7 hours and refusing to

step inside Plaintiff's cell to give him the medication, leaving him in pain. *See* ECF No. 25:9

(alleging that "policy" would not allow nurses who pass out medication to enter an inmate's

cell to give them medication if they remained in bed.); ECF No. 25:10 (allegations that "

'policy' will not allow the pill call LNUs' to step inside a cell (2 ft.) to pass a bedstricken

w/pain inmate his medication");[18] ECF No. 54:4 ("Such long hours of delaying Plaintiff's pain

meds are a customary practice of Turnkey Health employees."); ECF No. 54:12 (identifying

Turnkey policy as responsible for "leaving the Plaintiff laying in bed without proper medical

care [because] . . . [it] disregards the Plaintiff's inability to lift himself out of bed[.]"); ECF

---

[18]  Plaintiff repeatedly refers to "policy" without referring to who, exactly, is responsible for
implementing said policy. For example, Mr. Campbell's statement that " 'policy' will not allow the pill
call LNUs' to step inside a cell (2 ft.) to pass a bedstricken w/pain inmate his medication" was written
under a heading entitled "Mr. William Monday and Mr. Greg Williams, Administrators of Okla. Co.,
Det. Center/Criminal Justice Authority's Policies." *See* ECF No. 25:10. But in his response to the
Motion to Dismiss, Mr. Campbell indicates that the policy was implemented by Turn Key. *See* ECF
No. 54:12, 15. At this stage, the undersigned will liberally construe the Amended Complaint to allege
that the policy was implemented by Turn Key and officials at the OCDC.

No. 54:12 (Turnkey Health's customary widespread practice of delivering Plaintiff's 4:00/5:00p, prescribed pain meds, 5 to 10 hours later than the prescribed time for Plaintiff to take his prescription is unconstitutional."); ECF No. 54:15 ("Turn Key Health, LLC caused Plaintiff to suffer greater injury to the Plaintiff's spine and groin area through their policies of: (1) not allowing nurses passing out medication to enter cripple & handicapp [sic] patient's cell in order to deliver them medication[.]"). The Court should conclude that these allegations are sufficient to state a claim against Turn Key for deliberate indifference under the Fourteenth Amendment based on Plaintiff's theories that his pain medication was routinely delayed and sometimes not given at all.

### E.      Plaintiff's State Law Negligence Claims

In Claim Three, Plaintiff alleges negligence against all Defendants under Oklahoma state law. (ECF No. 25:24-25). Defendants Winchester, Jackson, Capehart and Turn Key have moved for dismissal of this claim, relying on *Barrios v. Haskell Cty. Pub. Facilities Auth.*, 2018 OK 90, ¶ 1, 432 P.3d 233, 241 (Okla. 2018), arguing that it is immune from such claim under the Oklahoma Governmental Tort Claims Act. (ECF No. 40:21-24. Relatively recently, the Tenth Circuit concluded that under these circumstances, reliance on *Barrios* is premature at the Motion to Dismiss stage. *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th at 1147-1148. There, the Court stated:

> An employee of the state or its political subdivision who operates or maintains a jail or correctional facility is exempt from state tort liability under the OGTCA. 51 Okla. Stat. Ann. § 155(25). The OGTCA defines "employee" as including licensed medical professionals under contract with the county who provide medical care to inmates or detainees. *Id.* § 152(7)(b)(7). The *Barrios* Court answered two certified questions of law related to whether the OGTCA applied to Oklahoma constitutional torts. 432 P.3d at 235. In footnote five, the

30

court wrote: "Generally speaking, the staff of a healthcare contractor at a jail are 'employees' who are entitled to tort immunity under the GTCA ...." *Id.* at 236 n.5. After quoting the definition of "employee" in the OGTCA, the footnote "assumed" that Turn Key and its staff were "employees" under § 152(7)(b) for purposes of answering the certified questions. *Id.* The court did not further analyze if Turn Key or its staff were employees because it was only concerned with whether Oklahoma constitutional torts are subject to the OGTCA.

Since *Barrios*, no Oklahoma court has further developed footnote five, let alone address whether a contracted medical provider is entitled to immunity. *E.g., Rocket Props., LLC v. Lafortune*, 502 P.3d 1112, 1114–15 (Okla. 2022). As for the federal court response, this court has not directly addressed the footnote other than to find a district court erred in exercising supplemental jurisdiction over a novel state law tort issue when it granted immunity to a healthcare contractor and its medical professional pursuant to that footnote. *Birdwell v. Glanz*, 790 F. App'x 962, 963–64 (10th Cir. 2020) (unpublished).

Federal district court decisions with views on state law are not binding on this court. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1296 (10th Cir. 2017). However, the majority of district courts that have addressed this question have been largely consistent in applying footnote five without distinguishing between the motion to dismiss or summary judgment stage, finding that *Barrios* is persuasive and grants immunity to private medical contractors. *E.g., Plunkett v. Armor Corr. Health Servs., Inc.*, No. 18-cv-125, 2022 WL 997357, at *6 (N.D. Okla. Apr. 1, 2022) (collecting cases).

Yet one district court denied immunity at the motion to dismiss stage, but granted it on summary judgment. *Buchanan v. Turn Key Health Clinics, LLC*, No. CIV-18-00171 (E.D. Okla. Feb. 27, 2019) (denying motion to dismiss); *Buchanan v. Turn Key Health Clinics*, LLC, No. 18-CV-00171, 2022 WL 2070493, at *8 (E.D. Okla. June 8, 2022) (granting summary judgment), appeal filed June 23, 2022. Further, in *Graham v. Garfield County Criminal Justice Authority*, another district court held that Turn Key had failed to demonstrate it was entitled to immunity under the OGTCA at the motion to dismiss stage. No. CIV-17-634, at 3–4 (W.D. Okla. Mar. 7, 2019). There, the court explicitly reiterated what is obvious; that *Barrios* "did not find that a healthcare contractor at a jail was an employee entitled to tort immunity under the OGTCA but simply assumed the healthcare contractor was an employee

for purposes of answering the certified questions before it." *Id.* at 4. Moreover, prior to *Barrios*, other district courts have found it premature at the motion to dismiss stage to determine whether a healthcare contractor and its medical professional employees fall within § 152(7)(b)(7) such that they are immune. *See Revilla v. Glanz*, 8 F. Supp. 3d 1336, 1345 (N.D. Okla. 2014).

We find *Revilla*, *Buchanan*, and *Graham* persuasive. On a motion to dismiss, it was premature for the district court to determine that Turn Key and Dr. Myers were entitled to immunity based on *Barrios's* non-binding legal assumption, which was decidedly not an express statement of law. *Colo. Visionary Acad. v. Medtronic Inc.*, 397 F.3d 867, 871 (10th Cir. 2005) (using only the "holdings and considered dicta of the State Courts" to divine how a state Supreme Court would rule on a particular issue (*quoting Hardy Salt Co. v. Southern Pac. Trans. Co.*, 501 F.2d 1156, 1163 (10th Cir. 1974))). The proper route in this instance without further guidance from Oklahoma courts is to determine the OGTCA's applicability to private corporations — and their employees — that contract with the state to provide medical services at the summary judgment stage if the factual record is sufficiently developed and the facts are uncontroverted. Accordingly, we reverse as premature the district court's decision that Turn Key and Dr. Myers are immune under the OGTCA.

*Id.* Based on this holding in *Lucas*, the Court should reject Defendants' reliance on *Barrios* regarding immunity under the Oklahoma Governmental Tort Claims Act as premature at this time.

## V.    RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Pursuant to its obligation to screen prisoner complaints under 28 U.S.C. § 1915A, the Court should dismiss: (1) Plaintiff's claims for improper denial of medical care under the Oklahoma State Constitution; (2) Claim Two, alleging liability against Turn Key Health (Turn Key) and official and individual capacity liability against Defendants Greg Williams and William Monday, premised on unconstitutional conditions of confinement in violation of the Fourteenth Amendment; (3) Plaintiff's official capacity Fourteenth Amendment claims

against Defendants Mark Winchester, Amanda Jackson, and Othello Capehart for deliberate indifference to Plaintiff's serious medical needs; (4) Plaintiff's individual capacity Fourteenth Amendment claims against Defendants Winchester, Jackson, and Capehart seeking injunctive relief for deliberate indifference to Plaintiff's serious medical needs; (5) Plaintiff's official capacity Fourteenth Amendment claims for monetary damages against Defendants Williams and Monday for deliberate indifference to Plaintiff's serious medical needs; and (6) Plaintiff's individual capacity Fourteenth Amendment claims for injunctive relief against Defendants Williams and Monday for deliberate indifference to Plaintiff's serious medical needs.

Additionally, following review of the Motion to Dismiss, the Court should: (1) dismiss Plaintiff's individual capacity Fourteenth Amendment claim against Dr. Winchester based on allegations of deliberate indifference owing to a lack of pain medication; (2) dismiss Plaintiff's claims against Turn Key which allege deliberate indifference to his serious medical needs based on Plaintiff's failure to receive his preferred medication and a violation of Equal Protection; (3) conclude that Plaintiff has stated a claim under the Fourteenth Amendment against Defendant Winchester, in his individual capacity, for failing to schedule Plaintiff's surgery, limited to the recovery of monetary damages; (4) conclude that Plaintiff has stated an individual capacity claim against Defendant Jackson for deliberate indifference under the Fourteenth Amendment based on the "gatekeeper" theory of liability, limited to the recovery of monetary damages; (5) conclude that Plaintiff has stated an individual capacity claim against Defendant Capehart for deliberate indifference under the Fourteenth Amendment based on the "failure to treat" theory of liability, limited to the recovery of monetary

damages; (6) conclude that Plaintiff has stated a claim against Turn Key under the Fourteenth Amendment based on Plaintiff's allegations that his pain medication was routinely delayed and sometimes denied; and (7) make no finding on Plaintiff's state law negligence claim at this time.

Plaintiff is hereby advised of his right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by **October 16, 2023.** *See* 28 U.S.C. § 636(b)(1); and Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10thCir. 2010).

## VI.   STATUS OF THE REFERRAL

This Report and Recommendation does not dispose of all issues currently referred to the undersigned magistrate judge in the captioned matter.

ENTERED on September 29, 2023.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

34